GRAYLING LUMBER COMPANY *v.* HEMINGWAY.

Opinion delivered June 12, 1916.

1. MASTER AND SERVANT—REPRIMAND—WAIVER OF RIGHT TO DISCHARGE.—The mere fact that a master reprimands his servant for not performing his work in an efficient manner, does not operate to waive his right to discharge his servant for inefficiency.

2. CONTRACTS—COMPLAINT—WAIVER OF BREACH.—The mere fact that one party to a contract complained to the other that the latter was not performing his contract according to its terms, does not amount to a waiver of such breach of the contract.

3. CONTRACTS—CONSIDERATION—MUTUALITY.—An agreement entered into between parties to a contract, in order to be binding, must be mutual; where the consideration consists of mutual promises, if it appears that the one party never was bound on his part to do the act which forms the consideration for the promise of the other, the agreement is void for want of mutuality.

Appeal from Desha Circuit Court; *James C. Knox,* Special Judge; reversed.

*J. Bernhardt* and *Sam Frauenthal,* for appellant.

1.   The verdict is contrary to the evidence, because there was no binding contract. It was too indefinite and uncertain as to distance the logs were to be hauled and the price to be paid. Tiedeman on Sales, § 45; 1 Mechem on Sales, § 209; Benjamin on Sales, § 69; 97 Ark. 613.

2.   There was no mutuality in the alleged contract. 100 Ark. 510; 96 *Id.* 184; 64 *Id.* 398; 6 L. R. A. (N. S.) 431; 20 *Id.* 899. The court erred in refusing instruction No. 5 asked by defendant, and in modifying No. 3.

3.   The verdict is excessive. 43 Ark. 439; 73 *Id.* 336; 91 *Id.* 427; 97 *Id.* 522; 105 *Id.* 105. Profits should not be allowed upon conjectural testimony, on opinions of parties or witnesses. 13 Cyc. 53; 103 Ark. 584; 78 *Id.* 336; 91 *Id.* 427; 97 *Id.* 522; 105 *Id.* 421, etc.

*F. M. Rogers,* for appellee.

1.   The evidence is ample to sustain the verdict. The price and terms were stated and proven. The profits were shown. 80 Ark. 228; 97 *Id.* 522.

2.   There is no error in the instructions and the verdict is not excessive. The damages by defendant's breach of the contract were proven by competent evidence.

HART, J.   C. C. Hemingway, Jr., sued the Grayling Lumber Company to recover damages for a breach of an alleged contract by which he was employed to haul and deliver logs for said company.

The plaintiff alleges that Hemingway entered into a verbal contract with the Grayling Lumber Company in February, 1915, to haul and deliver logs to the company for the balance of the year 1915. That the company agreed to pay him for the hauling as follows: For all logs delivered, where hauled a distance not exceeding one-quarter of a mile, $2.00 per thousand feet; for all logs delivered where hauled a distance exceeding one-quarter of a mile, but not exceeding one-half of a mile,

$2.50 per thousand feet; all logs delivered which were hauled over one-half of a mile, but not exceeding three-quarters of a mile, $3.00 per thousand feet; all logs hauled over three-quarters of a mile, and not exceeding one mile, $3.50 per thousand feet. The plaintiff further alleges that he entered upon the performance of the contract and hauled logs thereunder until May, 1915, at which time the lumber company without cause refused to permit him to further perform the contract. The material facts are as follows:

C. C. Hemingway, Jr., testified: B. J. Terry was the local manager of the Lumber Company. I had a logging outfit which consisted of forty mules and eight wagons and tents. Five mules constituted a team for a log wagon. I had done some logging for the company in 1914. My father acted as my agent in making that contract. In February, 1915, Mr. Terry came to me and asked me to go to work logging for the mill. I told him I would not put my team in the mud, water and ice unless he guaranteed me work for the balance of the year of 1915. He told me to go ahead and asked me how long it would take me to get ready. I told him that it would take me three of four days to get my outfit together and move it. I moved out on the job and hauled logs until in April, when I went to Mr. Terry and asked him again about the job. I needed new equipments, such as tents and harness, and I had heard rumors to the effect that the logging would be shut down. Terry told me to get the additional equipment and proceed with the work. I did so and about the 13th day of May I again heard rumors that the mill would stop the work of logging and went to see Mr. Terry about it. On that day Terry notified me to stop work. I endeavored to get other work after that but was unable to do so. I turned back some of the mules which I had not paid for. I had not been able to make any money up to time I was discharged. This was on account of the weather conditions which made the hauling very heavy. The roads were getting better in May so that thereafter I could have made a profit on the haul-

ing. After the time I was discharged I could have hauled with each team an average of 8,000 feet a day. The price I would receive would be $2.50 per thousand feet for hauling from a turn-round to one-half mile. I could have worked twenty-two days a month. I would have made $20.00 per day each team, and $412.75 of that would have been profit. My profits with eight teams counting twenty-two days as a month would amount to $2,250 per month. The testimony of the plaintiff was corroborated by other witnesses.

For the defendant B. J. Terry testified: I did not employ the paintiff in 1914. I did employ his father for that year to haul logs for the lumber company. I never made any contract with plaintiff on behalf of the company. I told the plaintiff's father that he could go to work logging the mill in 1915 with the understanding that it would have to be mutually satisfactory. I knew that his son was working with him. I never agreed to keep them in work for any particular length of time. During the whole time they worked in 1915, their work was unsatisfactory. I repeatedly told them that their work was not satisfactory, and urged them to do better. The woods foreman and his assistant corroborated the testimony of Terry as to the manner in which plaintiff did his work. They said that frequently he would leave logs and go to another place and commence hauling, that they would constantly have to watch him and make him go back and clean up the logs. It was also shown on the part of the defendant that Terry had told the plaintiff and his father that the price for hauling would be decreased when the weather conditions got better.

The jury returned a verdict for the plaintiff in the sum of $3,000, and the defendant lumber company has appealed.

It is insisted by counsel for the defendant that the evidence is not legally sufficient to sustain the verdict. They point to the fact that plaintiff bases his right to recover on his testimony to the effect that each team could haul on an average of 8,000 feet per day and that

he would receive $2.50 for hauling from a turn-round to one-half mile. There is no testimony in the record to support a finding that plaintiff could have made the haul as testified to by him. There were several distances which his complaint alleges that he was to haul logs and the prices varied with the distance. There is a total lack of evidence to show that any of the hauling which he would have done in the future would have been for a distance exceeding one-quarter but not exceeding one-half a mile. He might have been assigned to the task of hauling for a greater distance and for aught that appears from the record he might not have made any profit in hauling the increased distance. The burden was on him to show what his profits would have been. In other words in order to recover damages for an alleged breach of the contract, it was incumbent upon the plaintiff to show that he would have been assigned the task of hauling more than a quarter of a mile and not exceeding a half of a mile before he can recover for hauling that distance. Proof that he could have made a profit in hauling that distance does not tend to prove that the defendant company would have assigned him work at that distance for the balance of the year.

(1-2) Counsel for the defendant also insists that the court erred in giving in its modified form instruction number three as follows:

"3. If the jury find from the evidence that there was a contract between the parties, and that the plaintiff breached it, then the defendant will not be liable in this action; unless you further find from a preponderance of the evidence that such breach was condoned." The modification consisted in these words, "unless you further find from a preponderance of the evidence that such breach was condoned." We think the addition of these words to the instruction rendered it misleading and prejudicial to the rights of the defendant. The testimony on the part of the defendant shows that the work of the plaintiff and his father was not performed in a satisfactory manner during the year 1915. The local manager

of the defendant testified that he had occasion frequently to complain at the plaintiff and to urge that he and his father do their work in a more efficient manner. The mere fact that a master reprimands his servant for not performing his work in an efficient manner does not waive his right to discharge his servant for inefficiency. So here the mere fact that the defendant complained to the plaintiff that he was not performing his contract according to its terms did not amount to a waiver of such breach of the contract.

(3) Again it is contended by counsel for the defendant that the court erred in refusing to give instruction number five. The instruction reads as follows: "5. The court instructs the jury that in order that a contract be entirely binding and legal, the observance of its terms and conditions must be binding upon all the parties thereto. So, if the jury believe from the preponderance of the testimony in this case that the terms of the contract sued on, left it entirely optional with the plaintiff whether or not he would perform his promise, if you find there was a promise, then this contract would not be binding on the defendant, and you should find for the defendant." We think the court erred in refusing to give this instruction. It is a general principle in the law of contracts that an agreement entered into between parties to a contract in order to be binding must be mutual; and this is especially so when the consideration consists of mutual promises. In such cases, if it appears that the one party never was bound on his part to do the act which forms the consideration for the promise of the other, the agreement is void for want of mutuality. *El Dorado Ice & Planing Mill Co.* v. *Kinard,* 96 Ark. 184; *St. L., I. M. & S. Ry. Co.* v. *Clark,* 90 Ark. 504. The jury might have found from the evidence that the plaintiff was under no legal obligation to haul logs for the defendant any longer than he chose, and on this account the agreement was void for want of mutuality. Even if the jury should find that the defendant had agreed to employ the plaintiff to haul logs for the balance of the year 1915, the defendant had a right to

have its contention on this phase of the case submitted to the jury in concrete form and this was not done in any instruction given by the court.

For the errors indicated in the opinion, the judgment will be reversed and the cause remanded for a new trial.