**RED LOBSTER INNS OF AMERICA, INC., Appellee,**

v.

**LAWYERS TITLE INSURANCE CORPORATION and Standard Abstract & Title Co., Inc., Appellants.**

No. 80–1895.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1981.

Decided Aug. 25, 1981.

Edward L. Wright, Jr., Alston Jennings (argued), Wright, Lindsey & Jennings, Little Rock, Ark., for appellants.

Friday, Eldredge & Clark, Little Rock, Ark. by Michael G. Thompson, Little Rock, Ark. (argued), for appellee.

Before LAY, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Defendants-appellants Lawyers Title Insurance Corporation (Lawyers Title) and Standard Abstract & Title Co., Inc. (Standard Abstract) appeal the judgment of the district court[1] awarding plaintiff-appellee Red Lobster Inns of America, Inc. (Red Lobster) $78,805 for loss of profits and prejudgment interest on that amount.[2] The district court based its award upon a national agreement between Red Lobster and Lawyers Title and upon Standard Abstract's breach of its fiduciary duties as escrow agent. Appellants contend that there is no basis for an award of loss of profits, that Red Lobster did not carry its burden of proving proximate cause and that even if Red Lobster is entitled to judgment, the award of prejudgment interest is inappropriate. We affirm the district court's award of loss of profits but reverse the award of prejudgment interest.

## I. BACKGROUND

A detailed statement of the facts can be found in the district court opinion. *Red Lobster Inns of America, Inc. v. Lawyers Title Insurance Corp.*, 492 F.Supp. 933, 934–39 (E.D.Ark.1980). Following is a summary of the facts necessary to the resolution of this appeal.

Red Lobster is a corporation with company-owned restaurants scattered throughout the United States. In order to further its expansion plans, Red Lobster entered into an agreement regarding national land acquisition with Lawyers Title around July of 1974. Lawyers Title agreed to give priority service in exchange for Red Lobster purchasing the bulk of its title insurance from Lawyers Title. Lawyers Title's priority service, as set out in a memorandum, included: (1) acting as closing agent in Red Lobster land acquisitions through local agents of Lawyers Title; (2) examining title with a view toward Red Lobster's intended use as a restaurant; (3) advising Red Lobster of any restrictions of record that would be violated by restaurant use; (4) providing Red Lobster with a copy of such restrictions with the interim title insurance binders; and (5) issuing title insurance on land acquired by Red Lobster.

After making a market and site survey, Red Lobster decided to open a new restaurant in Little Rock, Arkansas, on property owned by Skaggs-Albertson Properties, Inc. Red Lobster wrote to Standard Abstract, Lawyers Title's agent in Little Rock, requesting them to act as escrow agent for the closing, to issue title insurance and to

---

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

2. Prejudgment interest was awarded on August 25, 1981, in an unpublished amendment to the original judgment. The original opinion and judgment, entered June 27, 1980, is published in 492 F.Supp. 933 (1980).

prepare title examination. Three days later, on January 30, 1976, Lawyers Title wrote Standard Abstract and enclosed the memorandum of the agreement between Red Lobster and Lawyers Title setting out the priority service requirements.

There was a restriction against use of the land as a restaurant[3] which Standard Abstract either overlooked or erroneously assumed did not apply when it made its original title search and also when it brought the title up to date before closing. On February 10, 1976, Red Lobster, unaware of the restriction, entered into a contract to purchase the land for their new restaurant and, with Standard Abstract acting as escrow agent, the purchase was closed on May 28, 1976. Construction began May 31, 1976, and Lawyers Title issued a title insurance policy through its agent Standard Abstract on June 4, 1976. The restriction against restaurant use was not an exception in the title insurance policy, therefore, it was insured against by the policy.

Subsequently, Red Lobster received letters from abutting land owners threatening legal action if construction violating the use restriction continued. On June 11, 1976, construction of the restaurant was halted and attorneys for Red Lobster, Lawyers Title, and Standard Abstract cooperated in efforts to remove the restriction. The objecting land owners agreed to a settlement. Construction recommenced on October 4, 1976, and was completed on December 16, 1976. A company rule against opening new restaurants during holiday seasons caused the actual opening to be delayed until January 18, 1977.

The district court found that the restaurant would have opened on August 24, 1976, if construction had not been halted because of the undisclosed use restriction. The court awarded Red Lobster $78,805 as the amount of profits lost between August 24, 1976, and December 16, 1976. In an amend-

ment to the original judgment, the court awarded prejudgment interest to Red Lobster.

## II. ANALYSIS

### A. The National Agreement

The district court noted that there were two contracts between the parties: the contract of title insurance and the national agreement between Red Lobster and Lawyers Title. The court awarded loss of profits to Red Lobster by going beyond the title insurance contract and basing liability in tort for the misperformance of the national agreement contract. *Red Lobster Inns of America, Inc. v. Lawyers Title Insurance Corp., supra,* 492 F.Supp. at 939–41.

■ On appeal, Lawyers Title[4] first argues that the national agreement does not constitute a contract because it lacked the consideration necessary for the formation of a contract. However, a contract was formed between the parties because Arkansas recognizes that mutual promises constitute adequate consideration for contract formation. *Abbott v. Arkansas Utilities Co.,* 165 F.2d 339, 341 (8th Cir. 1948). *See Grayling Lumber Co. v. Hemingway,* 124 Ark. 354, 187 S.W. 327 (1916); *Eustice v. Meytrott,* 100 Ark. 510, 140 S.W. 590 (1911). The mutual promises were Red Lobster's promise to buy the bulk of its title insurance from Lawyers Title in exchange for Lawyers Title's promise to give Red Lobster priority service.

■ Lawyers Title's second contention is that even if the national agreement is a contract, it merged into and is superceded by the title insurance policy. Lawyers Title relies upon item twelve of the conditions and stipulations section of the title insurance policy which provides in pertinent part:

3. A deed from Donald Warmack to Skaggs-Albertson Properties, Inc. on February 21, 1974, contained the following restriction: "No free standing separate building * * * will be constructed on the lands for use as a restaurant or a liquor store."

4. In oral argument, the attorney for Lawyers Title and Standard Abstract agreed that both companies stand or fall together. Therefore, whenever reference is made to Lawyers Title such reference also includes its agent, Standard Abstract.

12. Liability Limited to this Policy

This instrument together with all endorsements and other instruments, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company.

Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest covered hereby or any action asserting such claim, shall be restricted to the provisions and conditions and stipulations of this policy.

The Arkansas Supreme Court has cited and followed the Restatement of the Law of Contracts § 240. *Arkansas Aviation Sales, Inc. v. Carter Construction Co.*, 250 Ark. 1007, 469 S.W.2d 118, 119 (1971); *Bonds v. Littrell*, 247 Ark. 577, 446 S.W.2d 672, 674 (1969); *Magee v. Robinson*, 218 Ark. 54, 234 S.W.2d 27, 29 (1950). The relevant portion of section 240 provides:

§ 240. In What Cases Integration Does Not Affect Prior or Contemporaneous Agreements.

(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

(a) is made for separate consideration, or

(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract.

The district court ruled, and we agree, that there were two separate contracts between the parties. Under the national agreement Lawyers Title agreed to examine title and inform Red Lobster of use restrictions, while under the insurance policy Lawyers Title agreed to insure the title to the property. The national agreement setting out the priority service is not inconsistent with the title insurance policy which does not cover title examination and the duty to disclose restrictive covenants. The requirement in section 240(1)(a) is met because there was separate consideration for each contract. As previously discussed, mutual promises formed the consideration for the national agreement. In contrast, Red Lobster paid Lawyers Title for its promise of coverage under the title insurance contract. Additionally, the requirement in section 240(1)(b) is fulfilled because the national agreement is a broader contract of the type which would naturally be made as a separate agreement. The national agreement had been in effect since approximately July 1974, and many parcels of land had been acquired under it. For those parcels a specific title insurance policy was purchased. Therefore, the parties intended that the national agreement survive the issuance of the title insurance policy covering the 1976 Little Rock transaction and that the national agreement would apply in Red Lobster's future land purchases. In conclusion, the limitation in item twelve of the title insurance policy does not cause the national agreement to be merged into or superseded by that policy.

■ Lawyers Title's third contention is that the award of loss of profits is barred because Arkansas follows the tacit agreement rule for the recovery of consequential damages in breach of contract cases. Under that rule, "the plaintiff must prove more than the defendant's mere knowledge that a breach of contract will entail special damages to the plaintiff. It must also appear that the defendant at least tacitly agreed to assume responsibility." *Morrow v. First National Bank*, 261 Ark. 568, 550 S.W.2d 429, 430 (1977).

The district court's award of loss of profits was based in tort, therefore, the tacit agreement rule is inapplicable and consequential damages are recoverable. *See Morrow v. First National Bank, supra*, 550 S.W.2d at 431. In ruling that tort law allowed recovery, the district court relied upon Dean Prosser, who states that tort liability for misfeasance has been extended by American courts to virtually every type of contract where defective performance of the contract may injure the promisee.

The principle which seems to have emerged from the decisions in the United States is that there will be liability in tort for misperformance of a contract whenever there would be liability for gratuitous performance without the contract—which is to say, whenever such misperformance involves a foreseeable, unreasonable risk of harm to the interests of the plaintiff.

W. Prosser, Law of Torts, § 92 at 617–18 (4th ed. 1971).

The Arkansas Supreme Court, sitting en banc, cited and followed Prosser's distinction between misfeasance which may support a cause of action in tort and nonfeasance or inaction, which does not give rise to a cause of action in tort in *Findley v. Time Insurance Co.*, 264 Ark. 647, 573 S.W.2d 908, 911 (1978).[5] *See Morrow v. First National Bank, supra*, 550 S.W.2d at 431–32. The district court correctly ruled that the faulty title search and the failure to inform Red Lobster of the use restriction against restaurants constituted misperformance of the national agreement. Lawyers Title knew of Red Lobster's particular interest in the existence of restrictive use covenants and its misperformance involved a foreseeable, unreasonable risk of harm to the interest of Red Lobster. We affirm the award of loss of profits to Red Lobster.[6]

## B. *Proximate Cause*

■ Lawyers Title argues that the delay and damages were caused by the restriction itself, not by the failure to disclose it at any particular time and that even if the title defect had been brought to the attention of Red Lobster, the same or even a greater delay in opening the restaurant would have resulted.

The district court, in its analysis of this issue, stated:

On the surface this argument has considerable plausibility. However, it will not withstand analysis. By concentrating on what "would have been", the defendants ignore what *actually* occurred. On February 3, 1976 Standard purported to advise Red Lobster of all restrictions on its property. * * * Precisely at this time it breached its duty to advise Red Lobster that there was an outstanding restrictive covenant prohibiting use of this site as a restaurant location. But for this negligent omission, Red Lobster would have known of the use restriction. It could have followed two courses: (1) selected another site from other locations under consideration; (2) immediately begun attempts to have the restrictive covenant removed. If the latter course had been followed, we now know that no more than four months would have been required to remove the restriction. This time period would not have delayed the start of construction of the restaurant. In all probability the restriction could have been removed with much less difficulty. The fact that construction of the restaurant began on May 31, 1976 gave those privy to the restrictive covenant the leverage by which to demand their pound of flesh. They would have been in an entirely different position if no construction had been started and indeed if Red Lobster had not even contracted to buy the property (which they had not done on

5. The *Findley* court had to determine whether one paragraph of the plaintiff-insured's complaint stated a cause of action in tort for defective performance of the insurance contract. The complaint did not allege any affirmative action on the part of the defendant-insurer. The court ruled that the plaintiff's allegations of inaction did not support a cause of action in tort based upon breach of contract. *Findley v. Time Insurance Co.*, 264 Ark. 647, 573 S.W.2d 908, 911 (1978).

6. The parties advance arguments on two other possible bases for liability: the title insurance policy and the escrow agency of Standard Abstract & Title. Because we affirm on the basis of misperformance of the national agreement, extended discussion of those issues is not necessary. The district court did not base its award on the contract of title insurance. Second, although Arkansas has determined that an escrow agent is a fiduciary, *Collins v. Heitman*, 225 Ark. 666, 284 S.W.2d 628, 633 (1955), an application of the law of agency is not necessary in light of our holding that misperformance of the national agreement supports the loss of profits award.

2–3–76 when Standard purported to advise of all restrictions). The duty would have devolved on Skaggs-Albertson to provide a merchantable title, if it wanted to consummate the sale. It is reasonable to assume that in February of 1976, before the property was sold, Skaggs-Albertson and Red Lobster acting singly or together could have removed the cloud on the title with far less effort and far less money. Likewise, it is probable that the Little Rock Planning Commission approval would have been more easily obtained in February before the complaining landowners were alerted by the start of construction on the site. We cannot accept the argument that Red Lobster could not have opened their restaurant in any event on August 24, 1976, if they had been notified of the title defect on February 3, 1976. Such a conclusion is not only speculative but improbable.

*Red Lobster Inns of America, Inc. v. Lawyers Title Insurance Corp., supra,* 492 F.Supp. at 942.

We adopt the district court's resolution of this issue and hold that Red Lobster did meet its burden of proof regarding proximate cause.

### C. *Prejudgment Interest*

■ In an Order and an Amended Judgment filed August 25, 1980, the district court awarded prejudgment interest to Red Lobster. Lawyers Title argues that such interest should not be allowed because the amount of damages was not capable of exact determination after the loss.

The issue of prejudgment interest is a confusing area of Arkansas law. An en banc Arkansas Supreme Court referring to prejudgment interest issues, stated: "We must admit the error of the cases on this subject. They are simply irreconcilable and we must decide which rule to follow in this case and in the future." *Lovell v. Marianna Federal Savings & Loan Association,* 589 S.W.2d 577, 577–78 (Ark.1979). In setting the standard for the future, the *Lovell* court announced that "[t]he test in prejudgment interest cases is whether there is a

method of determination of the value of the property at the time of the injury. If such method exists, prejudgment interest should be allowed." *Lovell v. Marianna Federal Savings & Loan Association, supra,* 589 S.W.2d at 578.

Red Lobster's recovery of lost profits was based in tort in misperformance of the national agreement contract. The *Lovell* court recognized that in a case as late as 1973, Arkansas had ruled that prejudgment interest was not allowed in tort actions. However, the *Lovell* court determined that in certain types of tort actions prejudgment interest should be allowed.

... "Interest ... cannot be recovered in actions of tort, or in actions of any kind where the damages are not in their nature capable of exact computation, both as to time and amount. In such cases the party chargeable cannot pay or make tender until both the time and the amount have been ascertained, and this default is not therefor of that absolute nature that necessarily involves interest for the delay. But there are cases sounding in tort, and cases of unliquidated damages, where not only the principle on which the recovery is to be had is compensation, but where also the compensation can be measured by market value, or other definite standards. Such are cases of the unintentional conversion or destruction of property, etc.

*Lovell v. Marianna Federal Savings & Loan Association, supra,* 589 S.W.2d at 578–79.

In a very recent statement of the test, the Arkansas court stated: "Prejudgment interest will always be dependent upon the initial measure of damages being determinable immediately after the loss. If the damages are not by their nature capable of exact determination both in time and amount, prejudgment interest is not an item of recovery." *Wooten v. McClendon,* 612 S.W.2d 105, 106 (Ark.1981).

■ We believe that the district court's award is not in keeping with the standards recently set out by the Arkansas Supreme

Court.[7] Red Lobster's loss of profits was not capable of exact determination immediately after the loss. Red Lobster presented five exhibits and detailed testimony in its attempt to prove lost profits and the statistics relied upon in four of the five exhibits submitted to the court were not available until after the loss. The period in which profits were claimed to have been lost was a twenty-one week period from August 24, 1976 through January 18, 1977. Plaintiff's exhibit four showed the actual profit at the Little Rock restaurant for the same twenty-one week period but it showed it in the *following* calendar year, August 24, 1977 to January 18, 1978. Plaintiff's exhibit five showed the actual income realized in the first nineteen weeks after the Little Rock restaurant opened, January 18, 1977 to the end of May, 1977. Red Lobster used those nineteen weeks to get a weekly figure and extended that weekly figure out to a twenty-one week period profit figure. That exhibit also shows the actual income from operations for both 1978 and 1979. Red Lobster used figures on customer counts in proving its loss of profits. Plaintiff's exhibit six showed the customer count for every month of operation of the Little Rock restaurant from 1976 to 1980. Plaintiff's exhibit seven showed the average customer count for every store in the chain from 1973 to 1980. The above statistics relied upon by Red Lobster in proving its loss of profits show that there was not a method of determination available at the time of the injury.

Additionally, this is not the type of tort case for which Arkansas allows prejudgment interest. The loss of profits was not capable of measurement by market value or another definite standard at the time of the loss. Detailed statistical proof was required to prove the loss of profits sustained by Red Lobster. Loss of profits is not analogous to the injury that results in cases of unintentional conversion or destruction of property.

We affirm the judgment of the district court awarding loss of profits to Red Lobster, but we reverse the award of prejudgment interest.

---

7. It is a well recognized principle that: "[t]his Court will give special weight to a trial judge's interpretation of state law in diversity cases. Nevertheless, we are not bound by a district court's interpretation of state law and must reverse if we find that the district court has not correctly applied local law." *Bazzano v. Rockwell International Corp.*, 579 F.2d 465, 469 (8th Cir. 1978) (citations omitted).