**David M. LIDE, Plaintiff,**

**v.**

**C. Hugh CLINE and Bank of Oak Grove, Louisiana, Defendants.**

**BANK OF OAK GROVE, Louisiana, Plaintiff,**

**v.**

**David M. LIDE, Defendant. (Two cases).**

**Nos. PB–73–C–229, PB–C–80–53 and PB–C–80–195.**

United States District Court, E. D. Arkansas, Pine Bluff Division.

April 9, 1982.

Curtis Nebben, Friday, Eldredge & Clark, Little Rock, Ark., for David M. Lide.

Michael W. Mitchell, Little Rock, Ark., for Bank of Oak Grove.

## MEMORANDUM OPINION

WOODS, District Judge.

### FINDINGS OF FACT

1. Jurisdiction of this Court is based on diversity pursuant to 28 U.S.C. § 1332. The plaintiff David M. Lide, Jr. is a citizen and resident of Texas. Defendant C. Hugh Cline is a citizen and resident of Louisiana, and the Bank of Oak Grove, Louisiana is a Louisiana banking corporation. The amount in controversy exceeds the sum of $10,000.00 exclusive of interest and costs.

2. In 1971 Lide and Cline entered into a joint venture agreement for the purpose of raising of Charolais cattle. Cline was responsible for maintaining the herd and Lide for merchandising the progeny.

3. As part of the maintenance and care of the cattle, the Bank of Oak Grove extended credit to Cline and took a chattel mortgage in return.

4. The parties became involved in a highly acrimonious dispute, the background and aspects of which are not really pertinent to the judgment which we will enter herein. Lide sued Cline and the Bank of Oak Grove on December 7, 1973 for wrongful conversion of the cattle and requested an accounting.

5. After substantial discovery the parties entered into a settlement agreement under which the original claims and pleadings would be dismissed and the parties would be committed to new undertakings which were spelled out in considerable detail. The Court would retain jurisdiction only for the purpose of enforcing the settlement agreement. This agreement dated September 17, 1975 is attached hereto as Exhibit "A". It was signed by all the parties, and its validity and binding effect is not questioned. In its present posture this litigation is concerned only with whether the parties breached or induced breach of the settlement agreement.

6. The mutual undertakings of the respective parties in the settlement agreement was as follows: (1) Cline relinquished possession of the following members of the herd: 29 cows, 13 unweaned calves, 12 heifers, 10 progeny and 4 weaned calves; (2) Cline was to deliver these cattle to an auction barn at Delhi, Louisiana; (3) the Bank of Oak Grove would release the above cattle from any existing mortgages; (4) Lide promised to satisfy a judgment obtained by Charolais International, Inc. against Cline in the amount of $9,775.00; (5) Cline and the Bank of Oak Grove would satisfy a judgment obtained by David A. Witts against Cline on a note in the amount of $9,775.00 given by Cline in conjunction with the establishment of the herd; and (6) the agreement was to be fully performed no later than January 10, 1976.

7. On September 30, 1975 upon stipulation of the parties and pursuant to the release agreement, the complaint, counterclaims and setoffs were dismissed with prejudice by order of the Court. The Court retained jurisdiction to enforce the settlement agreement.

8. The settlement would doubtless have proceeded apace but for a dispute which arose in connection with item (5) in paragraph 6, *supra*, i.e. the obligation of Cline and the Bank of Oak Grove to satisfy the Witts judgment. The latter claimed that plaintiff Lide was interfering with their efforts to procure the judgment at a reduced sum.

9. I find that at the time the settlement agreement was executed by the parties, the Bank of Oak Grove thought that it had a binding agreement to purchase the Witts judgment for $3,000.00. Mr. Witts, however, approached Lide about selling the judgment to him since the note forming the basis of the judgment had been endorsed by Lide, the payee, with recourse. Another factor in Witt's approach to Lide was the pending of other litigation in the U. S. District Court in Dallas involving other transactions between Lide and Witts, which Witts was trying to settle. I find that Witts was the moving party in these approaches and contacts. While Lide had some interest in the Witts judgment because of his endorsement of the note, the paramount interest in this judgment resided in Witts and the Bank of Oak Grove. The latter had an unqualified obligation under the settlement agreement to satisfy the judgment. The former wanted to transfer it for the highest possible consideration.

10. Cline and the Bank were represented by the same attorney, who refused to authorize transfer of the cattle to Lide until the difficulty with the Witts note was resolved. I find that this refusal to ship the cattle forthwith was unjustified. The settlement agreement imposed an absolute duty on Cline and the Bank to forthwith satisfy the Witts judgment. If this required paying the face value of the judgment, they were so obligated. The fact that Witts reneged on selling them the judgment at a substantial discount did not justify Cline's refusal to ship the cattle and the Bank's encouragement of this refusal. I find that the Bank and its attorneys were the moving spirits in the decision not to comply with the clear terms of the agreement by shipping the cattle.

11. Cline, whose financial situation was desperate during all of the pertinent period, finally reached the end of his rope about December 1, 1975. His solution was simply to move off his farm, leaving the cattle unattended and without feed or water. As a result a substantial number of the animals died of starvation.

12. On December 12, 1975 Mr. Lide's counsel wrote to the joint counsel for Cline and the Bank stating that Lide stood ready and willing to perform all his obligations under the agreement and demanded that defendants perform their obligation (PX 8). It is noted that on October 10, 1975 Lide had acquired the Charolais judgment as he was obligated to do under the release agreement. Charolais executed a satisfaction of the judgment on this date, but it was not filed in the Clerk's office of West Carrol Parish, Louisiana until November 16, 1979. We do not regard the late filing as significant since a satisfaction of judgment had been executed by the judgment creditors on October 10, 1975. We therefore find that by this date Lide had substantially complied with his obligations under the agreement.

13. On January 7, 1976 one of the Bank's attorneys (who had not been involved in the instant litigation and was unaware of the settlement agreement) was given the responsibility to enforce certain security instruments held by the Bank in connection with various loans to Cline. He forthwith secured a writ of sequestration (DX 10) under which the sheriff of the parish seized all of Cline's chattels, including the cattle involved in the release agreement.

14. At the time that the cattle were seized under the writ of sequestration, they had already begun to starve as a result of Cline's abandonment. While an officer of the Bank made desultory attempts to feed and water the cattle from personal humane motivations, the cattle were not afforded the intensive care, medical attention, and maintenance justified by their previous maltreatment.

15. The Delhi Livestock Auction in Delhi, Louisiana would not handle the transfer of the cattle contemplated by the settlement agreement, but Lide arranged for handling by the West Monroe Livestock Auction and so advised defendants through his counsel by letter of December 12, 1975 (PX 8).

16. The defendants failed to comply with the terms of the release agreement by January 10, 1976, and plaintiff moved the Court on January 15, 1976 for an order compelling compliance. Such an order was entered on January 23, 1976 by U. S. District Judge Oren Harris to whom the case was then assigned. Judge Harris directed that the cattle be delivered to the designated livestock auction not later than February 10, 1976.

17. Pursuant to the Court order, but with another eight-day delay, the cattle were delivered to the West Monroe Livestock Auction on February 18, 1976. The cattle were then in a dead, dying or starving condition. Plaintiff refused to accept them in such shape, and they were salvaged at a value of $1,100.00 for conversion to dog food or sale to rendering plants.

18. Cline's breach of his duty under the settlement agreement resulted from intentional interference on the part of the defendant Bank of Oak Grove and by reason of the latter's inducement. I find that the failure of Cline to deliver the cattle to Lide was primarily the fault of the Bank of Oak Grove. I further find that the latter's activity in this regard was motivated by the Bank's desire to acquire the Witts judgment, which had a face value of Sixteen Thousand Dollars ($16,000.00), for Three Thousand Dollars ($3,000.00). While such a desire on the part of the Bank is understandable, the contract obligation was for the Witts judgment to be *satisfied*. Nowhere in the agreement is there a provision that the judgment must be obtained at a discount. I find that the Bank of Oak Grove interfered with Cline's delivery of the cattle in order to apply leverage in obtaining the Witts judgment at a discount.

19. I find that at the time the cattle should have been delivered to Lide they had a market value of Twenty-Four Thousand, Nine Hundred and Fifty Dollars ($24,950.00). The salvage value at the time of actual delivery was One Thousand, One Hundred Dollars ($1,100.00). I therefore find that Lide was damaged in the sum of Twenty-Three Thousand, Eight Hundred and Fifty Dollars ($23,850.00) by the breach of contract on the part of the defendants and the Bank's inducement of Cline's breach.

20. I find that because the value of the cattle could be and was actually fixed at a readily ascertainable figure, Lide is entitled to prejudgment interest from and after February 17, 1976 at the rate of six percent (6%) per annum, which amounts to Eight Thousand, Seven Hundred, Eighty-Four Dollars and Seventy-Five Cents ($8,784.75), making the judgment to be entered against defendants in the total sum of Thirty-Two Thousand, Six Hundred Thirty-Four Dollars and Seventy-Five Cents ($32,634.75).

21. Introduced in evidence in the case is the copy of a judgment obtained by David Witts against David Lide in the U. S. District Court for the Northern District of Texas in the sum of Forty-Six Thousand, Two Hundred Thirty-Nine Dollars and Fifty-Nine Cents ($46,239.59). The judgment which is denominated "Agreed Judgment" recites that a jury trial was commenced between the parties on July 14, 1976; that after plaintiff had presented his evidence and defendant had commenced to presentation of his evidence, the parties reached a settlement and requested that the Court enter an agreed judgment, which was done by Judge Patrick Higginbotham on August 17, 1976. At the trial before me, Lide testified that his attorney settled the case and entered the agreed judgment without his knowledge. Unwilling to believe that a trial could be terminated in the manner recited in the judgment without the knowledge of a man of Lide's business experience, I accord scant credit to this testimony. I find this judgment to be of full force and effect. No proof was adduced that any attempt was made to set it aside in the time provided by the Federal Rules.

22. On December 10, 1979 this judgment was assigned by Mr. Witts to the Bank of Oak Grove in consideration of the payment of Ten Thousand Dollars ($10,000.00). By amended answer the Bank pleads the judgment as a setoff against any judgment which may be rendered against them in favor of Lide. I find that the bank is entitled to the setoff as prayed. With interest this judgment now amounts to Seventy-Two Thousand, Three Hundred, Thirteen Dollars and Sixty-Two Cents ($72,-313.62). When this judgment is set off against the Lide judgment which I am rendering in the present proceeding, the Bank is entitled to judgment against Lide in the net sum of Thirty-Nine Thousand, Six Hundred, Seventy-Eight Dollars and Eighty-Seven Cents ($39,678.87).

23. Plaintiff Lide prays for assessment of attorney's fees in his behalf in addition to the judgment which is being entered against the Bank. As will be noted, *infra* under Arkansas law which applies to this diversity case, plaintiff cannot be awarded attorney's fees in addition to his judgment. Plaintiff relies upon certain cases arising under Federal statutes where attorney's fees may be granted when a party acts "in bad faith, vexatiously, wantonly and for oppressive reasons." Even if such a rule applied to this litigation, I would deny the plaintiff's request for attorney's fees in considering the sum total of the behavior of all parties to this litigation.

## CONCLUSIONS OF LAW

1. Cline and the Bank of Oak Grove deliberately failed to comply with the obligations under the settlement agreement of September 17, 1975.

2. The Bank of Oak Grove maliciously and willfully interfered with Cline's performance of the said release agreement of September 17, 1975. *Mason v. Funderburk*, 247 Ark. 521, 446 S.W.2d 543 (1969). See also *Saloman v. Crown Life Insurance Co.*, 536 F.2d 1233 (1976).

3. In *Mason v. Funderburk, supra* the elements of the tort of contractual intention were set forth as follows: (1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. The activities of the Bank of Oak Grove as detailed above fulfilled all these requirements.

4. Lide is entitled to prejudgment interest on the value of cattle. *Lovell v. Marianna Federal Savings Association*, 267 Ark. 164, 589 S.W.2d 577 (1979); *Wooten v. McClendon*, 612 S.W.2d 105 (Ark. 1981). The instant case is distinguishable from *Red Lobster Inns v. Lawyers Title Insurance Corp.*, 656 F.2d 381 (8th Cir. 1981), an Arkansas diversity case where prejudgment interest was disallowed.

5. The judgment obtained by David Witts against Lide in the United States District Court in the Northern District of Texas is a valid, binding and enforceable judgment. This judgment was properly assigned to the Bank of Oak Grove and may be used as a setoff by the bank.

6. This case is a diversity action. Where jurisdiction is based upon diversity, Federal courts are required to follow state law in determining whether attorney's fees should be allowed. *United States v. Johnson*, 525 F.2d 999 (9th Cir. 1975); *Michael-Regan Co. v. Lindell*, 527 F.2d 653 (9th Cir. 1975); *Peacock & Peacock, Inc. v. Stuyvesant Insurance Co.*, 332 F.2d 499 (8th Cir. 1964). The law of Arkansas is well settled that attorney's fees may not be allowed absent statutory authorization. *America Physicians Ins. Co. v. Hrusfa*, 428 S.W.2d 622. Since there is no Arkansas statute which would permit the recovery of attorney's fees in a case such as this, the Court may not consider making such an award. However, even were we permitted to assess fees where the losing party has acted in bad faith, we would decline to do so in this case.

7. An attorney's lien attaches at the time suit is filed and becomes a valid and binding encumbrance on any judgment obtained through the efforts of the attorney. *Home Insurance Co. v. Jones*, 253 Ark. 218, 485 S.W.2d 190 (1972). However, where as here, a setoff is permitted, the setoff has priority over the attorney's lien. *Popplewell v. Hill*, 55 Ark. 622, 18 S.W. 1054 (1892); *Park v. Hutchinson*, 80 Ark. 183, 96 S.W. 751 (1906). Accordingly, attorney's fees cannot be recovered in this case through the attachment of an attorney's lien.

## EXHIBIT A

### RELEASE AGREEMENT

KNOW ALL MEN BY THESE PRESENTS:

This release agreement is made between David M. Lide, Sr., David M. Lide, Jr., C. Hugh Cline, Jr., and The Bank of Oak Grove, Oak Grove, Louisiana.

On May 14, 1971, David M. Lide, Sr., David M. Lide, Jr., and C. Hugh Cline, Jr., entered into a certain "Agreement for Joint Venture", the purpose of which was the acquisition, breeding, raising and merchandising of high grade Charolais breeding cat-

tle. All parties to this release agreement hereby mutually release each other, their affiliates, successors, heirs, assigns, agents, representatives, any in privity with them or any of them, and all other persons, associations, and corporations, whether named herein or not, of and from any and all claims, damages, charges, and causes of action which any of the persons or parties named now or may ever have by reason of, on account of, or resulting from said "Agreement for Joint Venture", transactions made or costs or charges incurred pursuant thereto, transportation of all or portions of the herd of cattle created pursuant to said "Agreement for Joint Venture", and transactions and occurrences enumerated and referred to in the pleadings and other documents making up the Court's record in the lawsuit styled David M. Lide v. C. Hugh Cline and The Bank of Oak Grove, Louisiana, said lawsuit being Case No. PB–73–C–229 now pending in the United States District Court for the Eastern District of Arkansas, Pine Bluff Division. The above mutual releases are given for and in consideration of each other and for and in consideration of the following additional promises, covenants, and undertakings:

1. C. Hugh Cline, Jr. promises to relinquish possession of and all claims of ownership of and security interest in the following members of the herd created by said "Agreement for Joint Venture": ~~Thirty-two (32)~~ Twenty-Nine (29) surviving adult cows of original Joint Venture herd and all unweaned calves at side of said ~~32~~ 29 cows (~~12 to 11~~ 13 in number) and ~~eight (8)~~ twelve (12) Charolais heifers ~~chosen by Cline from~~ to include the 10 progeny of said Joint Venture herd inspected by Bill G. Martin on June 12, 1975, and presently segregated with the ~~29~~ surviving adult members of the Joint Venture herd, and four (4) other weaned calves from the Joint Venture herd.

2. It is understood and agreed that Cline shall have the herd described in Paragraph 1 inspected, tested and cleared for out-of-state shipment, and shall deliver said herd to the Delhi Livestock Auction, Delhi, Louisiana, as soon as reasonably possible. Upon safe delivery of the herd to Delhi, Cline shall cease to be liable for any expenses of storage, maintenance, feeding and transportation, and Lide shall assume all such expenses and responsibilities at that point.

3. Lide shall arrange for transportation of the above described cattle from Delhi. Cline shall be the bailor, and the person or persons transporting said cattle shall be his bailee until the cattle have crossed the Lou-

isiana border. Said cattle shall be promptly taken across the Louisiana border per Lide's instructions to Cline's bailee. Upon crossing the Louisiana border the cattle described in Paragraph 1 shall become the property of Lide free and clear of all claims of ownership and security interests by Cline and The Bank of Oak Grove; the person or persons transporting the said herd shall become the bailee of Lide when the cattle cross the Louisiana border. Cline shall bear no liability or responsibility for destruction of or damage to the said herd from the time of their delivery to Delhi Livestock Auction.

4. Upon the request of Lide, The Bank of Oak Grove will release by recordable document any specifically identified cows included in those described in Paragraph 1 from existing mortgages by Cline to The Bank of Oak Grove recorded in West Carroll Parish, Louisiana.

5. Lide hereby releases all claims of ownership of and security interests in all progeny of the Joint Venture herd except those to be delivered to Lide under this agreement.

6. Lide and Cline obligate themselves each to the other to furnish upon request information and signatures necessary to effectuate proper processing of AICA application for registration for all progeny of the Joint Venture herd which are registrable insofar as it is within their power to do so. Lide shall furnish such assistance through his attorneys, Smith, Williams, Friday, Eldredge and Clark, and Cline shall furnish such assistance through his attorneys, Coleman, Gantt, Ramsay & Cox.

7. Lide promises to satisfy a certain judgment obtained by Charolais International, Inc. of Natchez, Mississippi, against Cline, said judgment representing a judgment for amounts due on a promissory note dated May 14, 1971, in the original amount of Nine Thousand Seven Hundred Seventy-five Dollars ($9,775.00) given by Cline as maker in conjunction with the establishment of the Joint Venture herd. Upon the delivery of the herd described in Paragraph 1 of this agreement to Delhi Livestock Auction, Lide, through his attorneys, will fur-

nish to Cline's attorneys recordable documents reflecting satisfaction of said judgment.

8. Cline and The Bank of Oak Grove jointly and severally promise to satisfy a certain judgment obtained by David A. Witts against Cline, said judgment representing a judgment for amounts due on a promissory note dated May 14, 1971, in the original amount of Nine Thousand Seven Hundred Seventy-five Dollars ($9,775.00) given by Cline as maker in conjunction with the establishment of the Joint Venture herd. Cline and The Bank of Oak Grove shall furnish to Lide's attorney documents sufficiently demonstrating satisfaction of said judgment as soon as reasonably possible.

9. In addition, a certain horse owned by Lide and in Cline's possession will be delivered along with the cattle to Delhi Livestock Auction as described above.

10. It is understood and agreed that because of the nature and requirements of this agreement, the parties shall enter into a stipulation through their attorneys for an entry of an order reflecting the execution and existence of this agreement and requesting the Court in the case styled *David M. Lide v. C. Hugh Cline and Bank of Oak Grove, Louisiana*, Case No. PB–73–C–229, United States District Court for the Eastern District of Arkansas, Pine Bluff Division, to retain jurisdiction of this case for the enforcement of this agreement. All obligations and requests for cooperation and assistance for the registration of animals under this agreement shall be performed or made no later than January 10, 1976, in order that a final order of dismissal with prejudice may be entered in the above styled case at that time or thereafter.

11. Whenever the name "Lide" is used in this agreement, it shall be understood to mean and include David M. Lide, Sr. and David M. Lide, Jr.

12. This agreement shall constitute a dissolution and distribution of assets under the Joint Venture created by the above described "Agreement for Joint Venture." It is understood that none of the parties to

this release agreement admit any liability of any sort by reason of this agreement, and that this agreement is made by all parties hereto to terminate further controversy respecting the matters referred to herein. It is further understood and agreed that this release agreement contains the entire agreement between the parties, the terms of which are contractual and not mere recitals.

_____
David M. Lide, Sr.

Dated: _____ September 17, 1975 _____

COUNTY OF DALLAS            )
STATE OF TEXAS              ) SS

Subscribed and sworn to before me this _____ 17th day of _____ September _____ ,

1975.

_____
Notary Public

My commission expires:

June 1, 1977

_____
David M. Lide, Jr.

Dated: _September 17, 1975_____

COUNTY OF _____DALLAS_____ ) SS
STATE OF TEXAS             )

Subscribed and sworn to before me this 17th day of September ,

1975.

My commission expires:

June 1, 1977

_____
Notary Public

THE BANK OF OAK GROVE
OAK GROVE, LOUISIANA

By _____
President

Dated: _____ Sept. 22, 1975 _____

PARISH OF WEST CARROLL )
STATE OF LOUISIANA     ) SS

Subscribed and sworn to before me this 22nd day of September ,

1975.

My commission expires:

with death

_____
Notary Public

_____
C. Hugh Cline, Jr.

Dated: _____

PARISH OF WEST CARROLL )
STATE OF LOUISIANA          ) SS
      Subscribed and sworn to before me this _____ day of _____,
1975.

_____
               Notary Public

My commission expires: