# CHARLESTON.

MONESSEN IMPROVEMENT CO. v. FLYNN LUMBER CO.

Submitted November 9, 1915.  Decided December 17, 1915.

1. JUDICIAL SALES—*Title of Purchaser—Excepted Lands.*

Where a decree directs a sale of real estate, and appoints a special commissioner to make sale, and in describing the land to be sold, the decree excepts certain land, and the commissioner makes sale, and the court confirms the sale, and the decree of confirmation recites that the said lands are excepted from the sale, a purchaser from such commissioner acquires no title to the lands embraced in such exception.  (p. 410).

2. VENDOR AND PURCHASER—*Deficiency in Acreage—Set-Off.*

Where lands are sold by the acre, and it clearly appears that there

is a deficiency in the number of acres sold, and suit is brought in chancery to enforce a lien for the purchase money, the grantee may have set-off against the grantor's demand for purchase money, the value of the lands not received by the grantee, computed at the purchase price.  (p. 410).

Appeal from Circuit Court, Nicholas County.

Suit by the Monessen Improvement Company against the Flynn Lumber Company.  From a decree for defendant, plaintiff appeals.

*Affirmed.*

*G. G. Duff* and *Fred. O. Blue,* for appellant.

*W. C. Reddy, Alderson & Breckinridge,* and *Mollohan, Mc-Clintic & Mathews,* for appellee.

MASON, JUDGE:

On the 1st day of August, 1911, the Monessen Improvement Company conveyed to the defendant, the Flynn Lumber Company, three parcels of land in Nicholas County, W. Va., aggregating 416.84 acres, at the price of $35 per acre, amounting to $14.589.40; of which sum $11,922.40 was paid at the time, and the balance, to-wit: $2,667.00, to be paid in one year with interest.  A note was executed and lien reserved in the deed to secure the unpaid purchase money.  The note for $2,667.00 was not paid at maturity, and a suit in chancery was brought in the circuit court of Nicholas County to enforce the lien.  The sale was by the acre and not in gross.

The defendant answered the bill, claiming that there was a deficiency in the acreage of land so conveyed, of 76.20 acres, which at the purchase price of $35 per acre would amount to $2,667.00, which defendant asked to have set off against plaintiff's demand, and that the vendor's lien be declared satisfied and released.  Plaintiff filed a special reply to this answer: issue was joined and proof taken by both parties; and the cause was heard on the pleadings and proofs.  The circuit court held "that the 66.20 acres mentioned and described in the proceedings in this cause is not within the boundary of land owned by the plaintiff and that the plaintiff is not entitled to recover off of the defendant the price of the

said 66.20 acres''; but that there is due the plaintiff from the defendant the sum of $402.50, and decreed that the same be paid. From this decree the plaintiffs appealed.

The decree does not show for what this sum of $402.50 was decreed, but no doubt it was the amount due on the ten acres metioned and described in the bill. The defendant contested payment of this sum also, but no reason appears why this should not be paid. It appears to be a proper charge.

The record of this cause discloses the following facts, namely: Parcel No. 3, in plaintiff's deed to defendant, containing 228.14 acres, includes the 66.20 acres in controversy, held not to belong to plaintiff. The controversy in relation to this 66.20 acres, arises out of the following facts:

The record discloses that there were grants by the Commonwealth of Virginia to Teter Null, and to William and Benjamin Summers, under which plaintiff derived title to the said 228.14 acres, and that there was also a grant to Henry Banks, for another tract of land, known as the ''Stockton'' or ''Hamilton'' land, adjoining the Null and Summers grants. It also appears that an interlock, the extent of which is not disclosed, existed between the Null and Summers grants, and the Banks grant.

The record also shows that on October 15, 1873, the county court of Nicholas County, by a decree duly entered in a cause pending therein, entitled *C. V. Summers, guardian, etc., plaintiff,* v. *John McNutt, et al., defendants,* directed the sale of the Null and Summers grants, title to which was then in the heirs at law of William Summers, deceased, ''Except that portion of the Null and Summers Survey, which interlocks with J. A. Hamilton, (or Stockton) lands'', and appointed C. V. Summers as a special commissioner to sell ''said lands'', and authorized him to execute a deed to the purchaser. The record shows that C. V. Summers, special commissioner as aforesaid, made sale of said lands on January 22, 1874, to one R. K. Cautley, and conveyed the same to him by deed of same date, in four parcels or tracts, the fourth of which is described as containing 199 acres, and as running ''to a stake on Stockton's line, thence leaving Skyles and with Stockton.''

It appears that this tract described as containing 199 acres, is the same tract purported to be conveyed by plaintiff to

defendant as the third tract in the deed of August 1, 1911, except that the latter includes 66.20 acres across the Stockton line.

What reasons the court may have had for omitting the interlock from the operation of the decree of October 15, 1873, do not appear, and they are not now material; the facts being that the interlock was expressly excluded, and that no title thereto could have been passed by C. V. Summers, commissioner, to any purchaser, under the provisions of that decree, unless the decree confirming the sale had so provided. Even if the commissioner in making the sale had disregarded the express terms of the decree and included all or any part of the original interlock in the sale and deed to Cautley; and such sale and deed would have been without authority and void as to any land within the lap, and could not transmit the William Summers title as to any such portion, unless the decree confirming the sale approved a sale of the additional land and thereby modified the original decree. The powers of C. V. Summers, commissioner, were limited to the Stockton line, and even if he conveyed across it, he did not pass the William Summers title to any part of the interlock, unless, as we have just said, the original decree had been thus modified, which was not done.

There is no doubt as to the fact that the 66.20 acres lie within the interlock of the Null and Summers survey, and the Hamilton and Stockton lands. The land lying within this interlock having been expressly excepted from the land which C. V. Summers, commissioner, was authorized to sell, it follows that he had no authority to sell the same. Any such sale made by him would be a nullity. As plaintiff holds under the conveyance made by C. V. Summers, commissioner, and as Summers was not authorized to make the conveyance, the plaintiff got no title, and could convey none to defendant. The commissioner had no authority in the premises except such as he derived from the decree authorizing him to act. His authority regarding the land within the interlock is plain. The decree expressly excepts such land from sale; and it further appears that the decree of the court confirming the sale made by said commissioner excepted such interlock. It also plainly appears from the evidence that unless land in-

cluded in the interlock be included, there is a deficiency of 66.20 acres.

It is not necessary to consider the alleged forfeitures made by the claimants of the lands within this interlock, as they could not under the facts in the case inure to the plaintiff or its privies in title.

We are of opinion that there is no error in the decree of the circuit court in refusing to permit the plaintiff to recover for the 66.20 acres, and, therefore, affirm it.

*Affirmed.*