BECKOVSKY *v.* BURTON ABSTRACT & TITLE CO.

1. ABSTRACTS OF TITLE—DEFECTIVE ABSTRACT—EXPRESS CONTRACT —QUESTION FOR JURY.

In an action against an abstract company for damages growing out of the alleged negligent failure of the defendant, in extending and certifying an abstract, to show a certain incumbrance upon a piece of property plaintiff was about to purchase, testimony on the part of plaintiff, *held,* suffi-

cient to carry the question to the jury as to whether an express contract was made between plaintiff and defendant.

2. SAME—PAYMENT—PRIVITY OF CONTRACT.

In such action, if defendant's agent was advised, when the abstracts were left with him for extension and certification, that the services were to be rendered to plaintiff but were to be paid for by the vendors, and acquiesced therein, it is unimportant whether payment was made or not, there being privity of contract.

3. SAME—DEFECT—NOTICE—EVIDENCE—SUFFICIENCY.

Evidence *held*, insufficient to put plaintiff upon inquiry as to the mortgage in question.

4. SAME—PARTY DAMAGED.

There is no merit in defendant's contention that plaintiff was not the party who suffered damage because title to the property was taken in the name of his wife, where the declaration charged that plaintiff was the one purchasing the property and a copy of a quitclaim deed from his wife to him was attached thereto and made a part thereof, and the proofs showed conclusively that the entire consideration passed from him to the vendors.

5. SAME—DAMAGES—RELIANCE UPON DEFECTIVE ABSTRACT.

Where plaintiff, prior to receiving the defective abstracts sued upon, paid certain sums to the vendors on the purchase price, he is not entitled to have those amounts included in his damages, since they were not paid in reliance upon said abstracts.

6. SAME.

The argument of plaintiff that he should recover the full amount paid because after he received the abstracts he parted with the title to his own property, *held*, fallacious, since he received property of an equal value at that time.

7. SAME—EXCESSIVE DAMAGES.

The verdict for plaintiff, *held*, not excessive by the amount of certain notes of the vendors surrendered by plaintiff in reliance upon said abstract as part of the purchase price because soon thereafter said vendors became insolvent, where, so far as the record discloses, the notes at the time of their surrender were good and collectible.

For authorities passing upon the question of liability of title abstractors generally, see notes in 12 L. R. A. (N. S.) 449; 26 L. R. A. (N. S.) 1207; 42 L. R. A. (N. S.) 176, and L. R. A. 1916D, 826.

Error to Wayne; Hunt (Ormond F.), J. Submitted October 31, 1919. (Docket No. 101.) Decided December 22, 1919. Reargued April 28, 1920. Former opinion affirmed June 18, 1920.

Assumpsit by Morris Beckovsky against the Burton Abstract & Title Company for negligence in extending and certifying an abstract. Judgment for plaintiff. Defendant brings error. Affirmed conditionally.

*Campbell, Dewey & Stanton (Henry M. Campbell,* of counsel), for appellant.

*Keena, Lightner, Oxtoby & Hanley* and *Beckenstein & Weinner,* for appellee.

This action is brought by plaintiff against defendant for the purpose of recovering damages growing out of the alleged negligent failure of the defendant in extending and certifying an abstract to show a certain incumbrance for $15,000 upon a piece of property plaintiff was about to buy. The declaration in its first count alleged an express contract between plaintiff and defendant relative to the certification of the abstract and inasmuch as the case went to the jury upon the allegations contained in this count alone, consideration of the other two counts is unnecessary. The plea was the general issue with notice of certain defenses thereunder unimportant so far as this review is concerned. The mortgage lien not noted upon the abstract had been foreclosed before the suit was brought. The final decree in the foreclosure case fixed the amount due at $15,647.50; that sum plus interest to the day of the trial, $339, amounted to $15,986.50, for which sum plaintiff had judgment. Defendant now reviews the case in this court under 20 assignments of error.

BROOKE, J. (*after stating the facts*). 1. It is first asserted in behalf of the defendant that in cases of this kind the relationship between the parties is contractual and the action is not based upon tort. A leading case upon the question involved is *Savings Bank* v. *Ward*, 100 U. S. 195, where it is held that proof of employment is a prerequisite to maintenance of the action. This decision has been followed in *Harshman* v. *Winterbottom*, 123 U. S. 215 (8 Sup. Ct. Rep. 98) ; *Waters-Pierce Co.* v. *Deselms*, 212 U. S. 159 (29 Sup. Ct. Rep. 270) ; *German Alliance Ins. Co.* v. *Home Water Supply Co.*, 226 U. S. 220 (33 Sup. Ct. Rep. 32, 42 L. R. A. [N. S.] 1000). See, also, *Mallory* v. *Ferguson*, 50 Kan. 685 (32 Pac. 410, 22 L. R. A. 99) ; *Zweigardt* v. *Birdseye*, 57 Mo. App. 462; *Schade* v. *Gehner*, 133 Mo. 252 (34 S. W. 576) ; *Equitable Building & Loan Ass'n* v. *Trust Co.*, 118 Tenn. 678 (102 S. W. 901, 12 L. R. A. [N. S.] 449, 12 Ann. Cas. 407) ; *Thomas* v. *Trust Co.*, 81 Ohio St. 432 (91 N. E. 183, 26 L. R. A. [N. S.] 1210). Upon this point the court charged the jury as follows:

"I charge you that in order for the plaintiff to recover in this case, he must establish to your satisfaction that a contract relation existed between plaintiff, Beckovsky, and the defendant, the Burton Abstract & Title Company, under which and by reason of which the plaintiff had certain rights and the defendant certain obligations to perform with reference to the plaintiff. In other words, this contract relation which the plaintiff claims, must have been suggested that he, the plaintiff, had a right to rely upon this alleged contract, and the defendant had certain duties with reference to the plaintiff, and those duties he must have performed in the manner as I shall hereafter more in detail instruct you."

In this court defendant asserts:

"The plaintiff elected to go to the jury upon that count in the declaration charging an express contract. It is submitted that there is not a scintilla of

evidence in the case showing an express contract between this plaintiff and defendant."

In the light of this assertion and the charge of the court upon the question it is necessary to examine the evidence touching the question. It appears that on October 12, 1917, plaintiff had arranged an exchange of his property with Victor & Lipshitz. Plaintiff's property was valued at $40,000 subject to a mortgage of $13,000 and Victor & Lipshitz's property was valued at $75,000 subject to a mortgage of $35,000, the agreed net values of the two properties being respectively $27,000 for plaintiff's and $40,000 for that of Victor & Lipshitz. The difference of $13,000 was to be paid by plaintiff to Victor & Lipshitz, $9,000 in cash and the balance, $4,000, by the surrender of the notes for that amount held by plaintiff against Victor & Lipshitz. Two or three days later, plaintiff went to the office of Victor & Lipshitz, when, according to the plaintiff's testimony, the following occurred:

"*Q.* What took place in their office?
"*A.* I asked for the abstracts. I saw Victor give me the abstracts and he told me 'Here is your abstracts,' is the way he explained it. Then he tells me I should go and certify it. I told him, 'Would there be any difference if Miller go with me, or let him go with me?' He gave him the abstracts and I asked him, Mr. Miller, if he would go with me. So, on the way I asked him about that deal because he was collecting the rents and asked his information about the tenants and if it was true whatever it brings in. We went to the Burton Company with the abstracts for examination of the title. When I purchased real estate before I had the abstract certified to date and I would not have closed this deal until I had the abstracts examined by my attorney.

"*Q.* What took place when you went over to the Burton Company office?
"*A.* We went over and Mr. Miller handed the abstracts through the window. A young lady was sitting there and she asked 'What name?' and he told

her that this fellow, Mr. Beckovsky, bought the property and he said, 'I believe he wants to give it in in the name of Victor & Lipshitz because we have to pay the bill.' I says, 'Yes, that is what I want. I want you to certify the abstracts and I want you to charge the bill to Victor & Lipshitz.'

"Q. Who did you say that to?

"A. I said it to the young lady who took the abstracts. Mr. Miller handed the abstracts to the young lady behind the counter. There were three or four windows in this counter. The abstracts were handed in through the 'Order' window. This was about the 16th or 17th of October. A young man asked, 'Do you want them in a rush?' I told him, 'No, it is in no hurry about it.' The young man addressed his questions to both of us. He was not standing by the girls when we gave the order in. He just stepped in."

On cross-examination plaintiff testified:

"A. Yes, sir. Well, when me and Mr. Miller went to Mr. Burton's office, we went there to the window and we handed the abstracts, and the young man asked him which name to certify the abstracts and he said 'This gentleman here, Beckovsky, bought the property and I think he wants to give it in the name of Victor & Lipshitz, because it is up to them to pay the bill—up to us to pay the bill.'

"Q. He said, 'It was up to us to pay the bill'?

"A. Yes. I said, 'I want you to certify the abstracts for me and charge the bill to Victor & Lipshitz.'

"Q. State whether or not it is a fact that Mr. Victor asked Mr. Miller, in your presence, to take these abstracts and—over and have them signed up?

"A. I believe Mr. Victor told me to take the abstracts. That is the way I recall it."

Assuming the truth of plaintiff's testimony, we are of opinion that the language:

"I want you to certify the abstracts and I want you to charge the bill to Victor & Lipshitz,"

—and—

"I want you to certify the abstracts for me and charge the bill to Victor & Lipshitz."

—is sufficient to carry the question to the jury as to whether an express contract was made between plaintiff and defendant. The jury by its verdict determined that the contract was made as testified to by plaintiff.

2. It is next urged that under the testimony of the plaintiff the contract was plainly between Victor & Lipshitz and defendant and that therefore plaintiff being a stranger to the contract and not furnishing any part of the consideration he cannot recover. A sufficient answer to this contention is found in what we have said, *supra.*

3. The next point argued in appellant's brief is that inasmuch as there was no proof of payment of the amount charged by defendant for the certification of the several abstracts, plaintiff may not recover, citing 13 Corpus Juris, p. 367. If defendant's agent was advised when the abstracts were left with him for extension and certification that the services were to be rendered to plaintiff but were to be paid for by Victor & Lipshitz, and acquiesced therein, it seems to us that it is unimportant whether payment was made or not. It was said in the case of *Monaghan* v. *Insurance Co.*, 53 Mich. 238:

"But whenever there is a privity of contract between the plaintiff and the defendant, as when the promise is made directly to the plaintiff, although the consideration for the promise proceeds from a stranger, the defendant is liable to the plaintiff in an action upon the contract because of such privity."

See, also, *Palmer* v. *Bray*, 136 Mich. 85.

4. As outlined in his brief defendant's fourth position is that:

"At the time the deal was being closed, plaintiff had notice of outstanding papers affecting the title. Being so notified he proceeded thereafter at his peril and subject to any outstanding claims."

While it is true plaintiff testified:

"After they executed the deed Mr. Victor asked I should hold it over for a day or two because he said, 'I have some outstanding papers which I have got to take care of,' * * * He said: 'That is nothing, I will take care of it within a day or two.'"

We are of opinion that this was not sufficient to put plaintiff upon inquiry as to the $15,000 mortgage. The case of *Roberts* v. *Abstract Co.*, 63 Iowa, 76 (18 N. W. 702), cited by appellant, appears to be inapplicable because in that case the plaintiff knew of the defect in the abstract in time to have prevented the loss had he acted promptly.

5. "The plaintiff was not the party who suffered damage." This claim is based upon the fact that the title to the property of Victor & Lipshitz was taken by plaintiff in the name of his wife. The declaration, however, charges that plaintiff was the one purchasing the property and alleges that in order that the record might conform to the facts he had taken a quit-claim deed from his wife, a copy of which was attached to and made a part of the declaration. Furthermore, the proofs show conclusively that the entire consideration passed from plaintiff to Victor & Lipshitz. There is no merit in the contention.

6. "The damages are excessive." It is agreed in briefs of counsel that the certified abstracts were delivered to plaintiff on October 28th. It is therefore certain that plaintiff could not have relied upon said abstracts prior to that time. He testified:

"This agreement was signed on October 12th, 1917, by myself, Nathaniel Victor and Harry Lipshitz. At the time of the execution of the agreement, I paid over to them $1,000, and a few days later, on October 15th, 1917, I gave them $3,500. About a week later I gave two cashier's checks on a bank in Birmingham, Michigan, for about a thousand dollars and cash, making up $1,500 paid at that time."

We therefore find that by October 22d or six days prior to the day on which plaintiff received the abstracts in question he had paid to Victor & Lipshitz the sum of $6,000. Upon this question defendant requested the court to charge as follows:

"The undisputed evidence in this case shows that before plaintiff received the abstracts, he had paid to Victor & Lipshitz, the sum, at least, of four thousand, five hundred dollars, and defendant claims that fifteen hundred dollars more was also paid by plaintiff before the abstracts were delivered to him. You are instructed that such sums as you find were paid by plaintiff before the abstracts were received by him should be deducted from the amount of the fifteen thousand dollar-mortgage and interest up to on or about December 3d, 1917."

The request was apparently covered in the charge in the following language:

"I charge you, as a matter of law that the defendant is not liable to the plaintiff for anything which the plaintiff did or did not do until the abstract was furnished and delivered and was in the hands of plaintiff. In other words, whatever he then did or did not do could not have been by reason of the default of the defendant, because not having this abstract back from the defendant, whatever he did, he did upon his own volition so far as the defendant is concerned. So, gentlemen of the jury, you will not take into any consideration that the defendant is liable in any respect for anything that he did or did not do preceding the time when the plaintiff received back the abstract as prepared and certified by the defendant. I think you understand that proposition. Did the plaintiff suffer any damages by reason of the reliance upon the abstract? You are only to take into consideration what he did or did not do after he received the abstract, because he could not have relied upon something he did not have. Then, you will eliminate, as I said, what he did or did not do up to that time. That is, if you pass the first two questions in favor of the plaintiff."

But the court continued:

"Now, there are at least three different theories of damages in this case. It is claimed by plaintiff that the deed which he made to Victor & Lipshitz was made after he received the abstract back, had an examination made, and that he did that in reliance upon the abstract—upon its correctness and validity. You can take that into consideration if you find that he did deed his property in reliance upon the abstract. And all other things that happened thereafter that he did, if you find that he did them in reliance upon it, you may consider them in making up your items of the damage which the plaintiff suffered, if any.

"Finally, the plaintiff asked the court to instruct the jury that in any event that if plaintiff is entitled to recover, that he is entitled to recover the amount of the decree which was entered in the circuit court for the county of Wayne, in chancery, on the 8th of August, 1918. Now, it is conceded that that decree was for a certain amount. Before we reach that, however, gentlemen of the jury, it is the law that upon the discovery of the error by plaintiff it was his duty, being placed in that situation when he discovered the defect or error in the abstract, to use reasonable diligence and exercise reasonable exertion to save himself, if possible, from adverse consequences. The defendant is only liable for such damages which plaintiff could not himself have reasonably prevented or lessened. I think you understand that. In other words, if plaintiff discovered that there was an error he should at once, as far as a reasonable man could under the circumstances, do all that he could to save himself from the situation in which he was then placed. I am going to leave that as a matter of fact for you. Did the plaintiff when he discovered the error, exercise reasonable diligence and do all that a reasonable man should under the circumstances, to save himself from further loss? Do not take that from the court as being the impression that he had. If you do find that he used reasonable diligence and took reasonable steps and used reasonable exertion to save himself from further loss and if you further find that he could not thereafter have done anything to lessen the damages, mitigate the damages, it is manifest, gentlemen of

the jury, then and in that case only, that this decree of the court that was entered appears to be—now, I will leave that with you—appears to be the amount of damages which he has suffered. Understand that I do not say that that is conclusive, and it is a circumstance, gentlemen of the jury, that if he had not gone ahead with this deal, for you to say whether he would have ever deeded his property and received this other deed from Victor & Lipshitz of the property in exchange. It is reasonable to suppose that if the abstract was certified under the circumstances in this case and it did not disclose this lien or mortgage, plaintiff had a right to suppose there was no such lien of record, and it afterwards developed that there was —and you have heard all the testimony about this litigation, and of the efforts of both plaintiff and defendant to have it declared invalid—at any rate, a final decree was entered on or about the 8th day of August for $15,647.50, and if plaintiff is going to have that property as he expected that he would have it, that is, free and clear from that, he must pay it.

"Now, gentlemen of the jury, the interest as I understand it, has been conceded or, at least there has been no objection made, that the interest on that from the date of the decree is $339, and that the decree and interest to date is $15,986.50. Now, that is what the plaintiff must pay as the testimony now stands in order to redeem the property from that lien."

While the latter excerpt is not entirely clear we must regard it as an invitation or at least an authorization to the jury to allow plaintiff the full amount of the $15,000-mortgage, interest and costs, entirely disregarding the fact that prior to the obtaining of the certified copies of the abstracts plaintiff had already parted with $6,000. This is made clearer upon an examination of the motion for a new trial based in part upon this specific ground. The court denied the motion, saying:

"The reasons stated in defendant's motion are seven in number, but the only question argued by counsel upon the hearing of the motion related to the question

of damages.   Upon this question the court charged the jury at length and a repetition thereof would serve no useful purpose here.   The court is of the opinion that in the charge to the jury, a more elaborate exposition on the general rule might have been given, but in the instant case, the court finds that such a general charge upon abstract propositions could not have aided the defendant, and being of the opinion that the charge as given safeguarded the rights of the defendant in all essential matters, the motion for new trial is hereby denied."

It is further urged on behalf of the defendant that the verdict is excessive by the amount of $4,000 notes surrendered by plaintiff to Victor & Lipshitz at the time of the exchange of the papers on November 1st. This claim is based upon the fact that very soon thereafter Victor & Lipshitz became insolvent and it is urged that the notes were worthless.   We do not believe this claim tenable.   So far as this record discloses the notes at the time of their surrender were good and collectible.   It seems quite clear, however, that the judgment against defendant is too great by the amount of $6,000 and interest thereon, from the date of the payment to the day judgment was taken. Plaintiff's argument that he should recover the full sum of the judgment and interest because after he received the abstracts he parted with the title to his own property valued at $27,000 is entirely fallacious because he got in exchange the property of Victor & Lipshitz of an equal value at that time.   By reason of the defendant's default plaintiff is out on the entire transaction just the amount of the judgment in this court and from that amount must be deducted such sums as were paid by him before he received the abstracts because they were paid of his own volition, uninfluenced by the failure of the defendant to properly note upon the abstract the $15,000-incumbrance.

If the sum of $6,000 and interest as above stated is

remitted from the verdict the judgment will stand affirmed for the lesser sum. If not so remitted a new trial will be ordered. Appellant will recover costs in either case.

BIRD, C. J., and MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred. SHARPE, J., did not sit.

ON REHEARING.

BROOKE, J. After listening to a reargument upon the question of the measure of damages, and upon further consideration of that question, we are of opinion that the conclusion thereon reached in the original opinion herein is correct.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.