**Dallas BYRD, Plaintiff,**

v.

**MARTIN, HOPKINS, LEMON AND CARTER, P.C., et al., Defendants.**

**Civ. A. No. 81–0559–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

June 1, 1983.

Fergus B. Norton, Roanoke, Va., for plaintiff.

George W. Wooten, Wm. B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

Dallas Byrd (Byrd) brought this action for legal malpractice against Martin, Hopkins, Lemon and Carter, P.C., (MHL & C), William L. Martin, Osterhoudt, Ferguson, Natt and Aheron, P.C., (OFN & A), Charles H. Osterhoudt, Michael S. Ferguson, Edward A. Natt and Michael J. Aheron. Jurisdiction vests in this court pursuant to 28 U.S.C. § 1332(a)(1). This action is now before the court on the defendants' motions for summary judgment. *See* Fed.R.Civ.P. 56.

Byrd's legal malpractice action arises out of the following facts. In 1972, Byrd owned land in Botetourt County, Virginia, on which he wished to construct a shopping center. In March 1972, he conveyed his intention to build a shopping center to the Botetourt County Board of Supervisors (Board). Specifically, by letter dated March 14, 1972, Byrd stated that he was "contemplating developing a shopping cen-

ter. . . . Before leasing commitments can be made and actual construction begun it is imperative that this area be served with public sewer service. Therefore, I request you to consider serving this area with a public sewer system in the immediate future." (Byrd Dep.Ex. 3). The Board responded by passing a resolution on March 24, 1972, which stated that "this Board does hereby pledge its efforts and resources to provide this complex and the surrounding area with sewer service which service is further pledged to be available at the time of opening of the center." (Byrd Dep.Ex. 7).

Byrd next appeared before the Board on February 19, 1973, at which time he informed the Board that he was ready to begin constructing the shopping center but that he first needed reassurance from the Board that sewer service would be available to the project by March 1974. At that time, the Board reaffirmed its commitment of 1972 to provide sewer service to the shopping center by March 1974. Byrd was notified of the Board's decision by a letter dated February 22, 1973. (Byrd Supp. Dep.Ex. 13 and 13A). Byrd contends that the March 14, 1972 letter to the Board, and the Board's February 22, 1973 letter to him constituted a written contract obligating him to build a shopping center in return for Botetourt County providing sewer service to the site of the proposed shopping center.

Botetourt County subsequently began exploring various alternatives for providing sewer service to the area of the proposed shopping center. However, no sewer system was ever provided to the area, and Byrd did not start construction of the proposed shopping center. Byrd eventually defaulted on payments to a bank on various loans, and the bank sold the property in Botetourt County at public auction on July 28, 1978.

Byrd then retained MHL & C to sue the county for breach of contract. On February 28, 1979, MHL & C filed suit against the county in state court. But a nonsuit was taken on November 28, 1979. Byrd thereafter filed a notice of claim with the

Board, as is required by Va.Code §§ 15.1–547 and –550. The Board disallowed Byrd's claim on December 17, 1979.

Due to a conflict of interest, MHL & C subsequently referred Byrd to OFN & A, whom Byrd contacted in January 1980 concerning his claim against the county. On March 7, 1980, OFN & A filed suit against the county for breach of contract. However, on August 15, 1980, this action was also nonsuited. Byrd then filed another claim with the Board on September 3, 1980. And on October 15, 1980, OFN & A filed a second lawsuit against the county for breach of contract. That action was dismissed by the state court on October 1, 1981. Byrd filed this action on December 28, 1981, alleging that these defendants were negligent in handling his breach of contract claim against the county.

On March 1, 1983, the OFN & A defendants filed a motion for summary judgment on the grounds that their alleged negligence could not have been the proximate cause of Byrd's damages in that the applicable limitations period had expired on his breach of contract claim prior to his retention of these defendants as his counsel. On March 30, 1983, the MHL & C defendants filed a motion for summary judgment on the grounds that (1) the limitations period for Byrd's legal malpractice claim had expired; (2) the limitations period for Byrd's breach of contract claim had expired prior to his retention of these defendants; and (3) these defendants' alleged negligence was not the proximate cause of Byrd's damages because the negligence of OFN & A was the superseding intervening cause of his alleged injury.

These motions came on for a hearing on April 6, 1983, and the court took them under advisement pending the submission of a brief in opposition by Byrd's counsel.

Thereafter, on May 20, 1983, the MHL & C defendants filed a supplemental motion for summary judgment on the grounds that their alleged negligence was not the proximate cause of Byrd's injury in that (1) there was never any contract between the Board and Byrd because there was no meeting of the minds or mutuality of obligation, and

(2) even if there was a contract, such contract was *ultra vires* and thus unenforceable against the Board.

On May 25, 1983, Byrd's counsel filed a brief in opposition to MHL & C's first motion for summary judgment. On that same date, the court held a telephone conference call during which the parties gave argument in support of their respective positions, and the OFN & A defendants joined in MHL & C's supplemental motion for summary judgment. The court having considered the argument of counsel and the entire record, defendants' motions for summary judgment are now ready for disposition.

A motion for summary judgment should be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The appropriate focus in this diversity action, of course, is whether the undisputed facts show that the defendants are entitled to judgment under the law of Virginia. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937).

■ To recover against an attorney for negligence, a plaintiff must prove (1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of the plaintiff's loss. *Maryland Casualty Co. v. Price,* 231 F. 397, 401 (4th Cir.1916). Proof that the attorney was negligent is itself insufficient. "[T]he extent of the damages sustained by the complainant must be affirmatively shown; for the attorney is only liable for the actual injury his client has received. . . ." *Allied Productions, Inc. v. Duesterdick,* 217 Va. 763, 764, 232 S.E.2d 774, 775 (1977).

Byrd alleges that the defendants negligently handled his breach of contract claim against Botetourt County and that OFN & A was negligent in failing to sue MHL & C for the latter's negligence in suing the county. Therefore, to recover against the defendants for negligence, Byrd must prove that they were negligent and that but for their negligence, he would have recovered

damages against Botetourt County for breach of contract. And if the undisputed facts reveal that any of these elements of proof are absent, the defendants will be entitled to judgment as a matter of law.

The parties are in sharp dispute as to whether there was ever any contract formed between Byrd and the Board. The defendants argue that there was no meeting of the minds and that the essential terms of the alleged contract were so uncertain that they created no power of acceptance in the Board. The defendants further argue that the alleged contract lacked mutuality of obligation because Byrd never promised to do anything in return for the county providing sewer service to his land. Byrd contends, however, that the letters exchanged between him and the Board both before and after February 19, 1973, constituted a "meeting of the minds," and that many of the absent terms were unforeseeable at that time. And Byrd testified that he promised to build a shopping center in exchange for the county providing his land with sewer service. (Byrd Supp.Dep. 39–40, 81).

Regardless of whether summary judgment is appropriate on the basis that there was no contract, see Charbonnages De France v. Smith, 597 F.2d 406 (4th Cir. 1979), assuming without deciding that a contract was formed between Byrd and the Board, the court concludes that the defendants are entitled to summary judgment because their alleged negligence, as a matter of law, could not have proximately caused Byrd's alleged injury.

■ Counties and cities cannot be bound by a contract which is beyond the scope of their powers. Richard L. Deal and Associates, Inc. v. Commonwealth, 224 Va. —, 299 S.E.2d 346 (1983). And such ultra vires contracts are void ab initio, thereby allowing a local governmental unit to set up as a defense its lack of power. Id.

■ Section 15.1–320 of the Code of Virginia provides in part that "[f]or the purpose of providing relief from pollution and for the improvement of conditions affecting the public health, ... the governing body of any county ... shall have power ... (1)

To establish, construct ... operate and maintain a sewage disposal system ...", subject to the approval of the State Water Control Board." Although a municipal corporation acts in a proprietary capacity when it operates or maintains a sewer, it acts in a governmental capacity and exercises discretionary functions when selecting and adopting a plan for the construction of a sewage disposal system. Cf. Freeman v. City of Norfolk, 221 Va. 57, 266 S.E.2d 885 (1980) (street maintenance is proprietary function but street design is governmental function).

Byrd alleges that the Board promised to provide a sewage system to his proposed shopping center. The Board's determination of whether to build a sewer system was a governmental function which was subject to the Board's discretion. Consequently, the contract between Byrd and the Board concerned a governmental function and the exercise of legislative discretion.

■ The Supreme Court of Virginia has indicated that units of local government cannot by contract or otherwise barter away or surrender their essential legislative or police powers, and that contracts which impinge upon these essential governmental powers are void. See Mumpower v. Housing Authority of City of Bristol, 176 Va. 426, 452, 11 S.E.2d 732, 742–43 (1940) (holding inter alia that a provision in a contract whereby a city agreed to vacate and close streets selected for such by a housing authority was invalid because the location of public ways was a legislative function, and the contract provision thus infringed upon the city's legislative and discretionary powers); cf. Va.Code § 15.1–19.5 (1981 Repl. Vol.) (officers of a local governmental unit may delegate powers and duties unless such requires the exercise of judgment for the public welfare). Thus, although a county has the power to construct sewer systems, if it enters into a contract which restricts the exercise of this discretionary legislative function, such contract is ultra vires and void ab initio.

As indicated above, the subject of the contract between Byrd and the Board involved the exercise of the Board's legisla-

 

tive discretion. So the court must determine whether this contract restricted the Board's legislative powers and was thus void.

The court concludes that the contract purported to restrict the statutory authority granted the Board by Va.Code § 15.1–320 to determine whether it was in the public interest to construct a sewage disposal system in the area of the proposed shopping center. According to Byrd, the Board promised in the contract to "have the [sewer] service available by your contemplated opening date of March 1974." (Byrd Dep.Ex. 13). This contract thus hampered the discretion of future boards to determine if the public interest would best be served by constructing a sewer in that area. Moreover, the express terms of this contract imposed an unconditional obligation upon Botetourt County to build a sewer system, regardless of whether the county could obtain suitable financial arrangements. This absence of a condition that suitable financing be obtained further restricted the Board's legislative discretion. *See Mumpower,* 176 Va. at 45, 11 S.E.2d at 743.

The court therefore holds that the alleged contract to provide sewer services to Byrd's land purported to restrict the Board's discretionary authority to promote the public health. Thus, assuming that the contract was formed, it was *ultra vires* and void *ab initio,* and the Board would have been able to successfully plead its own lack of power in Byrd's breach of contract action. *Accord Rockingham Square Shopping Center, Inc. v. Town of Madison,* 45 N.C. App. 249, 262 S.E.2d 705 (1980) (contract wherein a town promised to open road as inducement for corporation to build shopping center was *ultra vires* and unenforceable against the town because it restricted the discretionary authority of the town's governing body).

The contract was also *ultra vires* and thus void *ab initio* in that it attempted to obligate the Board to construct a sewer system even if the project was not approved by the State Water Control Board, *see* Va.Code § 15.1–320 (1981 Repl.Vol.), or the county

could not obtain voter approval to finance the project by the issuance of bonds. *See* Va.Code §§ 15.1–322 –324 (1981 Repl.Vol.). Thus, even if the contract did not restrict the Board's discretionary power, it was still unenforceable because it went beyond the scope of the county's power to construct sewage disposal systems. *See Richard L. Deal and Associates, Inc., supra.*

In light of these conclusions, the court holds that the defendants' alleged negligence could not have been the proximate cause of Byrd's failure to recover damages for the Board's alleged breach of contract. Accordingly, the defendants are entitled to summary judgment on Byrd's legal malpractice claims. This decision renders unnecessary a determination of the parties' other contentions. An appropriate order and judgment will be entered this day.