Imogene **DESSEL**, Executor of the Estate of James L. Dessel, Deceased, Plaintiff,

v.

George **DESSEL**, Defendant.

George **DESSEL**, Appellee,

v.

R.L. **DONOHUE**, Appellant.

No. 86–1098.

Supreme Court of Iowa.

Nov. 23, 1988.

Rehearing Denied Dec. 16, 1988.

**360**

Frederick G. White, Waterloo, for appellant.

David M. Elderkin and Edward M. Blando of Elderkin, Pirnie, Von Lackum & Elderkin, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and NEUMAN, JJ.

HARRIS, Justice.

The court of appeals set aside a client's recovery for legal malpractice, determining as a matter of law that none of the client's damages were proximately caused by the conduct of the attorney. We vacate the court of appeals decision. We affirm in part, reverse in part and remand.

James Dessel, now deceased, and his brother George Dessel were partners in a successful retail furniture business. In 1979 James decided to retire and it was agreed to dissolve the partnership. To do so they consulted R.L. Donohue, a local attorney, whom they engaged to draw up the dissolution agreement. Neither brother had independent counsel; both relied on Donohue to represent them.

The agreement provided for the sale of James' share of the partnership, except for accounts receivable, to George. The accounts receivable were to be divided equally as they were collected.

After the dissolution, James died. His widow Imogene was appointed executor of his estate and Donohue was retained as her attorney. A dispute arose between Imogene and George about the collection and division of the accounts receivable.

During the dispute Donohue counseled both George and Imogene. When the matter could not be resolved Donohue, acting for the estate, sued George, claiming George breached his fiduciary duties in the collection of the accounts. George then retained other counsel. George thereafter filed a third-party action against Donohue, claiming Donohue committed legal malpractice in representing him. Donohue then removed himself as attorney for James' estate.

This appeal has to do with George's two claims against Donohue. The first relates to the manner in which Donohue drafted the partnership dissolution agreement. The agreement contained a hold harmless clause and this provision was a prime basis for Imogene's suit against George. This provision was inserted by mistake and in violation of the wishes and instructions of both James and George.

George also asserts he was damaged because of Donohue's conflict of interests. Under the original dissolution agreement James and George were to share in efforts to collect the accounts receivable, even after James retired from the business. Later

James decided to leave the state and to rely on George alone to collect the remaining accounts. To compensate for this change the two entered into a separate oral agreement which provided that George was to be paid a six percent commission for the accounts he collected.

On the basis of the second agreement George made collections and retained six percent of the amounts so collected. After James died Imogene disputed the second agreement. As a result of Donohue's advice George stopped taking the six percent fee and paid $7606 to the estate for commissions previously retained under the second agreement.

After a bench trial the estate's suit against George was dismissed. On George's claims against Donohue the trial court awarded George attorney fees for defending the action because the agreement was improperly drafted. The court also found there was an agreement between James and George regarding commissions. It awarded George $28,368 for commissions under the second agreement. It also awarded George $20,000 in punitive damages.

I. In a lawyer malpractice case the plaintiff must demonstrate:

 1. the existence of an attorney-client relationship giving rise to a duty;

 2. that the attorney, either by an act or a failure to act, violated or breached that duty;

 3. that the attorney's breach of duty proximately caused injury to the client; and

 4. that the client sustained actual injury, loss, or damage.

*Burke v. Roberson*, 417 N.W.2d 209, 211 (Iowa 1987).

There is no question concerning the existence of the attorney-client relationship. Donohue raises his defense against the other three elements, contending there was not substantial evidence to support the trial court's findings of negligence, proximate cause or damages.

■ II. The trial court found Donohue negligent by reason of each of the claimed breaches of duty. Substantial evidence supported the trial court's factual findings on George's first negligence claim against Donohue. Because Donohue inserted the hold harmless clause into the dissolution agreement by mistake, and in violation of instructions, he was negligent.

The second claim is based on a violation of the code of professional ethics for lawyers. It is clear that the "code of professional responsibility sets the standard for an attorney's conduct in any transaction in which his professional judgment may be exercised." *Cornell v. Wunschel*, 408 N.W.2d 369, 377 (Iowa 1987).

It is also clear that the code does establish a specific standard regarding conflicts of interest. The district court found Donohue breached three rules: (1) DR4–101(B) (lawyer shall not knowingly use a confidence or a secret of a client to the disadvantage of the client); (2) DR5–105(C) (lawyer shall not continue multiple employment if the exercise of that lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the representation of another client); and (3) DR7–101(A)(3) (a lawyer shall not intentionally prejudice or damage a client during the course of a professional relationship).

There is substantial evidence to support these findings. Donohue represented both parties even after the dispute became obvious. There is testimony that Donohue questioned George about his activities and then used the information as a basis for the suit against George. Finally, Donohue sued George at a time when Donohue represented George as the sole owner of the partnership. George established both claims regarding Donohue's negligence.

■ III. The proximate cause requirements in legal malpractice suits are the same as in other tort actions. *Black Hawk Bldg. Sys. v. Law Firm*, 428 N.W.2d 288, 290 (Iowa 1988). To establish proximate cause two things must be shown: (1) the harm would not have occurred had the actor not been negligent, and (2) the negligence was a substantial factor in bringing

**362**

about the plaintiff's harm. *Pedersen v. Kuhr*, 201 N.W.2d 711, 713 (Iowa 1972).

The trial court found that Donohue's negligence in inserting the hold harmless clause proximately caused George to pay for legal expenses to defend the estate's suit against him. Ample evidence supports this finding. Both the answers to the interrogatories filed by James' estate and the opening statement of the estate's counsel at trial show that the estate's claims against George were predicated, in substantial part, on the hold harmless agreement.

The trial court also found that Donohue's violation of the professional ethics canons was the proximate cause of other damages. We think this finding also finds substantial support in the record. It is difficult, if not impossible, to conceive that, if Donohue had not been counsel for the estate, he would have recommended to George that he pay back the commissions. Donohue's advice was clearly a substantial factor, indeed a decisive factor, in George's surrender of the commission he had earned and his failure to collect additional commissions to which he was entitled.

■ IV. In a legal malpractice action the general measure of damages is the amount of loss actually sustained as a proximate result of the conduct of the attorney. *Pickens, Barnes & Abernathy v. Heasley*, 328 N.W.2d 524, 525 (Iowa 1983). It is not clear that the allowance for George's attorney fees was limited to the defense of the estate's claims against him. It might have also included fees for prosecuting his own suit. Hence the court of appeals remanded the case for a redetermination. We agree that the allowance should be so limited and that a remand is appropriate to determine the correct fee.

With regard to George's second claim the trial court awarded $28,368 in compensatory damages. We find this amount to be inaccurate. George collected accounts totaling $1,137,697. The six percent commission due him from the dissolved business partnership was $68,262. Of this amount he collected $47,500 from the business account. Without the complication of the

$7606 he was advised to pay to James' estate, the business would owe George an additional $20,762. Of course the business funds from which this amount was due were owned one-half by George and one-half by James' estate. Hence George is entitled to recover only one-half of the $20,762, or $10,381, plus the $7606 which was improperly paid directly to James' estate. Upon remand judgment on this claim should be entered in the total amount of $17,987.

■ V. The trial court also entered an award for punitive damages. We have said:

An award for punitive damages is appropriate when a party acts with actual or legal malice. Actual malice is shown by such things as personal spite, hatred, or ill will. Legal malice is established by showing wrongful conduct committed with a willful or reckless disregard for the rights of another. More than mere negligence must be shown.

*Barnhouse v. Hawkeye State Bank*, 406 N.W.2d 181, 184 (Iowa 1987) (citations omitted).

We agree with the court of appeals in disallowing the punitive damage claim. The evidence does not support a finding of either actual or legal malice. Certainly there was no showing of spite, hatred or ill will on the part of Donohue. Hence there was no actual malice. Neither do we think there was evidence of a willful or wanton disregard for George's rights. The record supports no more than a finding of negligence.

We have considered Donohue's other assignments of error and find them without merit. Costs are taxed one-half to George and one-half to Donohue.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND REMANDED.