391 S.E.2d 895

**Ralph J. KEISTER and Ruby Keister**

**v.**

**William W. TALBOTT and Charles F. Herold, Webster County Clerk.**

**No. 19081.**

Supreme Court of Appeals of West Virginia.

April 2, 1990.

William L. Jacobs, Jacobs & Chandler, Parkersburg, for Ralph J. Keister and Ruby Keister.

E.V. Morton, Jr., Morton & Morton, L.C., Webster Springs, for William W. Talbott.

Kimberly G. Mann, Lynch, Mann, Smith & Mann, Beckley, for Charles F. Herold and Webster County Clerk.

MILLER, Justice:

This is an appeal by the plaintiffs below, Ralph J. Keister and Ruby Keister, from an order of the Circuit Court of Webster County, dated February 21, 1989, which denied the plaintiffs' motion to set aside the jury verdict in a civil action below. The jury returned a verdict finding in favor of the plaintiffs on the liability issue, but

awarding no damages. The only issue on appeal is whether the jury was advised of the proper measure of damages.[1] We conclude that they were, and we affirm the judgment of the circuit court.

In January 1986, Mr. Keister acquired an option to purchase two tracts of land situate in Webster County from one Hazel Morris Brown. Mr. Keister hired a Webster County attorney, defendant William W. Talbott, to examine the title to these tracts. Through his attorney, Mr. Keister specifically inquired as to the ownership of the surface and of the coal and mining rights. In a letter dated February 13, 1986, Mr. Talbott advised Mr. Keister that Mrs. Brown had title to both the surface and the mineral rights.

By general warranty deed prepared by Mr. Talbott and dated June 24, 1986, Mrs. Brown conveyed to Mrs. Keister the two tracts of land, "together with all the coal, oil, gas and other minerals underlying said tracts ... and all mining rights and privileges appurtenant thereto[.]" When Mr. Keister subsequently attempted to lease out the coal rights, Mr. Talbott learned that a third party was claiming to have the right to mine the coal underlying the property. By letter dated July 30, 1986, Mr. Talbott advised Mr. Keister that further investigation had revealed that the coal rights had, in fact, been conveyed away in 1946 by the prior owners. Mr. Talbott attributed his failure to discover this conveyance during his title search to improper indexing of the land books by the county clerk.[2]

In November, 1986, the plaintiffs instituted a civil action in the Circuit Court of Webster County against Mr. Talbott and Charles F. Herold, former Webster County Clerk. The complaint alleged that the plaintiffs had been deprived of the ownership of the coal underlying the property by

---

1. The plaintiffs assert numerous additional trial errors, but in view of the favorable liability verdict and our resolution of the damages issue, we do not address them.

2. The property had originally been conveyed to Dale Morris, with a remainder over to her children, including Helen Morris (Brown). The coal outconveyance deed reflected a conveyance by Dale Morris, in her own right, and Clarence Morris, guardian of the aforementioned children. The Grantor Index, however, made no mention of the children and listed a conveyance of "4.3 A & 23.6 Acres Coal[,] Mack Run, Glade District," under the names "Morris, et al, Clarence, Gdn. [and] Dale."

virtue of the negligence[3] of Mr. Talbott and/or Mr. Herold and sought compensatory damages in the amount of $10,000,000.

Prior to trial, however, defendant Herold filed a motion in limine seeking to limit the amount of recovery to the difference between the purchase price and the fair market value of the Keister tracts without the coal. The trial court ruled that, as a matter of law, the plaintiffs could not establish a causal connection between their loss of the coal rights and the alleged negligence of the defendants. The trial court granted the motion in limine and excluded any evidence of lost profits the plaintiffs claimed as a result of being unable to conduct mining operations. At trial, the court also excluded evidence offered by the plaintiffs as to the value of the coal in place under the property. Evidence of damages at trial was limited to testimony as to the fair market value of the property without the coal.

On November 2, 1988, the jury returned a verdict against both defendants, but assessed damages in the amount of "$0." By order dated February 21, 1989, the trial court denied the plaintiffs' motion to set aside the verdict. This appeal ensued.

In this appeal, the negligence of Mr. Talbott and Mr. Herold is not contested. The central issue is whether their negligence was the proximate cause of the damages claimed by the plaintiffs. The plaintiffs contend that the trial court should have allowed them to present evidence of the value of the coal under the property or of

the profits they could have made from extracting it.

## I.

■ A brief analysis of the elements of an attorney malpractice claim is necessary to this inquiry. An attorney who undertakes to perform professional services for a client is required to exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession in similar circumstances.[4] *See Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971); *Lamb v. Barbour,* 188 N.J.Super. 6, 455 A.2d 1122 (1982), *certif. denied,* 93 N.J. 297, 460 A.2d 693 (1983); *George v. Caton,* 93 N.M. 370, 600 P.2d 822 (App.), *cert. quashed,* 93 N.M. 172, 598 P.2d 215 (1979); *Hodges v. Carter,* 239 N.C. 517, 80 S.E.2d 144, 45 A.L.R.2d 1 (1954); *Glenn v. Haynes,* 192 Va. 574, 66 S.E.2d 509, 26 A.L.R.2d 1334 (1951). *See generally* 1 R. Mallen & J. Smith, *Legal Malpractice* § 15.2 (3d ed. 1989); 7 Am. Jur.2d *Attorneys at Law* § 199 (1980); 7A C.J.S. *Attorney & Client* § 254 (1980).

■ The test for actionable legal malpractice was stated in *Maryland Casualty Co. v. Price,* 231 F. 397, 401 (4th Cir.1916): "In a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) The attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to

---

**3.** We have recognized that a legal malpractice action may sound in tort or in contract. *Harrison v. Casto,* 165 W.Va. 787, 271 S.E.2d 774 (1980); *Family Sav. & Loan, Inc. v. Ciccarello,* 157 W.Va. 983, 207 S.E.2d 157 (1974). The pleadings in this case clearly indicate that the plaintiffs instituted a negligence action. However, the principles discussed in this opinion apply equally to actions for breach of contract. *See McClain v. Faraone,* 369 A.2d 1090 (Del.Super.1977); *Reamer v. Kessler,* 233 Md. 311, 196 A.2d 896 (1964).

**4.** We have approved a similar standard with regard to other professions. *See Weaver v. Union Carbide Corp.,* 180 W.Va. 556, 378 S.E.2d 105 (1989) (marriage counselor); *Brown v. Bluefield Mun. Bldg. Comm'n,* 167 W.Va. 318, 280 S.E.2d 101 (1981) (medical doctor); *Schroe-*

*der v. Adkins,* 149 W.Va. 400, 141 S.E.2d 352 (1965) (medical doctor). *See also First Nat'l Bank of Bluefield v. Crawford,* 182 W.Va. 107, 386 S.E.2d 310 (1989). Indeed, this standard is applicable to any profession, as we recognized in note 4 of *Weaver,* 180 W.Va. at 558, 378 S.E.2d at 107:

"This rule is generally stated in Section 299A of the Restatement (Second) of Torts: 'Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities."

*See Prosser & Keeton on the Law of Torts* 185–87 (5th ed. 1984).

the client." *See, e.g., Byrd v. Martin, Hopkins, Lemon & Carter, P.C.,* 564 F.Supp. 1425 (W.D.Va.1983), *aff'd,* 740 F.2d 961 (4th Cir.1984); *Weiner v. Moreno,* 271 So.2d 217 (Fla.App.1973); *Dessel v. Dessel,* 431 N.W.2d 359 (Iowa 1988); *Wooddy v. Mudd,* 258 Md. 234, 265 A.2d 458 (1970); *Basic Food Indus., Inc. v. Grant,* 107 Mich.App. 685, 310 N.W.2d 26 (1981); *George v. Caton, supra; Jamison v. Norman,* 771 S.W.2d 408 (Tenn.1989); *Williams v. Barber,* 765 P.2d 887 (Utah 1988); *Allied Prods., Inc. v. Duesterdick,* 217 Va. 763, 232 S.E.2d 774 (1977).

Proof of the attorney's negligence alone is insufficient to warrant recovery; it must also appear that the client's damages are the direct and proximate result of such negligence. *Stewart v. Hall,* 770 F.2d 1267 (4th Cir.1985); *Byrd v. Martin, Hopkins, Lemon & Carter, P.C., supra; Blackhawk Bldg. Sys. Ltd. v. Law Firm of Aspelmeier, Fisch, Power, Warner & Engberg,* 428 N.W.2d 288 (Iowa 1988); *Allied Prods., Inc. v. Duesterdick, supra; Bowman v. Two,* 104 Wash.2d 181, 704 P.2d 140 (1985). Damages arising from the negligence of an attorney are not presumed, and the plaintiff in the malpractice action has the burden of proving both his loss and its causal connection to the attorney's negligence. *E.g., Thompson v. D'Angelo,* 312 A.2d 639 (Del.Super.1973), *aff'd,* 320 A.2d 729 (Del. 1974); *Safeco Title Ins. Co. v. Reynolds,* 452 So.2d 45 (Fla.App.1984); *Zych v. Jones,* 84 Ill.App.3d 647, 40 Ill.Dec. 369, 406 N.E.2d 70 (1980); *Blackhawk Bldg. Sys. Ltd. v. Law Firm of Aspelmeier, Fisch, Power, Warner & Engberg, supra; Lieberman v. Employers Ins. of Wausau,* 84 N.J. 325, 419 A.2d 417 (1980); *Rorrer v. Cooke,* 313 N.C. 338, 329 S.E.2d 355 (1985); *Evora v. Henry,* 559 A.2d 1038 (R.I.1989); *Allied Prods., Inc. v. Duesterdick, supra. See generally* 7 Am.Jur.2d *Attorneys at Law* § 223; Annot., 90 A.L.R.3d 293, 297 (1979).

## II.

In this case, the plaintiffs contracted to purchase the property in fee simple for the sum of $15,000. Ultimately, their title was defective in that it did not include the coal underlying the property. In *Home Fed. Sav. & Loan Ass'n v. Spence,* 259 Md. 575, 585, 270 A.2d 820, 826 (1970), the Maryland Supreme Court had this to say in regard to proximate cause and damages in a malpractice action involving a title search:

"In 1 Am.Jur.2d, *Abstracts of Title,* §§ 19 and 26, it is said that an 'abstracter is not liable for losses incurred otherwise than in reliance on the abstract,' and that his liability extends only to losses 'directly resulting from, or proximately caused by, his breach of duty to furnish a correct abstract.' *See also Beckovsky v. Burton Abstract and Title Co.,* [208 Mich. 224] 175 N.W. 235 (Mich.1919), and 1 C.J.S. *Abstracts of Title* § 11d."

*See Staab v. Cameron,* 351 N.W.2d 463 (S.D.1984). *See generally* Annot., 28 A.L.R.2d 891 (1953). Where the client has been injured by the attorney's negligence in certifying or examining title to real estate, the exact nature of damages may depend on the nature of the client's interest in the property, the character of the attorney's error, and the other facts of the case. *Hoppe v. Ranzini,* 158 N.J.Super. 158, 385 A.2d 913 (1978); *Jennings v. Lake,* 267 S.C. 677, 230 S.E.2d 903 (1976). *See generally* 2 R. Mallen & J. Smith, *Legal Malpractice* §§ 25.9, 25.10 (3d ed. 1989).

We are not cited any cases which discuss the measure of damages in a legal malpractice action where the attorney has overlooked an outconveyance of mineral rights. The only case we have found is *Nilson–Newey & Co. v. Ballou,* 839 F.2d 1171 (6th Cir.1988), in which the title attorney not only failed to discover a prior conveyance of mineral rights, but also neglected to report a substantial deficiency in the surface acreage. The court concluded that the appropriate measure of damages was the difference between the purchase price and the market value of the reduced acreage without the coal. Thus, in an action for malpractice against an attorney who has overlooked an outconveyance of property which results in the purchaser receiving less than he had contracted to buy,

damages are ordinarily determined by subtracting the value of the property actually received from the purchase price paid.

■ This appears to be the general rule in vendor-purchaser law, as well. Where, after accepting a conveyance of real property, the purchaser discovers a marked deficiency in the amount of acreage, he may recover damages from the vendor for the value of the deficiency. *Monessen Improvement Co. v. Flynn Lumber Co.*, 77 W.Va. 408, 87 S.E. 495 (1915). *See Brand v. Lowther*, 168 W.Va. 726, 739, 285 S.E.2d 474, 483 (1981). *See generally* Annot., 94 A.L.R.3d 1091 (1979); 77 Am.Jur.2d *Vendor & Purchaser* §§ 492–533 (1975).

■ The plaintiffs, however, contend they are entitled to recover the benefit of their bargain, i.e., the value of the property with the coal, instead of the ordinary damages, i.e., the amount by which the purchase price exceeds the value of the property actually conveyed. They cite *Jennings v. Lake, supra,* for this proposition. In *Jennings*, the attorney certified that the purchasers' lot ran to the edge of a lake, when, in fact, there was a strip of land in between. Although the attorney argued that the purchase price was the measure of damages, the South Carolina Supreme Court concluded that the purchasers "were entitled to recover the difference between the value of the actual property received and the value of the property which would have been received if it had contained the quantity or acreage certified by the attorney." 267 S.C. at 680, 230 S.E.2d at 905.

The court in *Jennings* cited no authority for its rule. It also appears that the purchasers had placed improvements on the strip of land they did not own and that repayment of the purchase price would not compensate them for their loss. We decline to accept *Jennings* as controlling in this case.

Moreover, the plaintiffs overlook the proximate cause issue in this case. As the

court stated in *Ballou,* the attorney's negligence did not cause the loss of the mineral rights. "It is not [the attorney's] fault that the land turned out to have no coal, but it is [his] fault that the plaintiff bought the land. Had it not been for [the attorney's] negligence (*i.e.*, had [the attorney] told [the plaintiff] about the deficiency in acreage and about the [adverse mineral] interest), [the plaintiff] would not have bought the land at all." 839 F.2d at 1176. The test of proximate cause in an attorney malpractice case was discussed in *Gill v. DiFatta,* 364 So.2d 1352, 1356 (La.App.1978): "The proper method of determining whether a party's omission to perform an act imposed by a duty is a cause in fact of damage to another is to determine whether performance of that act would have prevented the damage."

Here, at the time Mr. Talbott undertook the title search, the grantor, Mrs. Brown, had no title to the coal under her property. Had Mr. Talbott correctly examined the title, his discovery of the prior outconveyance would not have altered that fact. Thus, the plaintiffs were not deprived of the coal rights as a proximate result of Mr. Talbott's negligence. Consequently, the plaintiffs' damages for the loss of their bargain, i.e., the failure to acquire ownership of the coal, cannot be charged against Mr. Talbott.[5] What they did lose as a result of his negligence was the opportunity to rescind the purchase contract.

■ These same principles apply to limit any recovery against defendant Herold. If Mr. Herold had properly indexed the outconveyance in 1946, the plaintiffs would not have acquired any greater interest in the coal rights. Any negligence on his part in failing properly to index the prior conveyance was, therefore, clearly not the proximate cause of the plaintiffs' failure to acquire title to the coal. Accordingly, defendant Herold is liable, at most, for any difference between the purchase price and

---

**5.** We need not address whether the purchasers could have asserted a claim for the benefit of the bargain against the vendor based on the warranty of title. *See Anzalone v. Strand,* 14 Mass.App. 45, 436 N.E.2d 960 (1982); *Donovan*

*v. Bachstadt,* 91 N.J. 434, 453 A.2d 160, 28 A.L.R.4th 1062 (1982). *See generally* Annot., 13 A.L.R.3d 875 (1967); Annot., 54 A.L.R.2d 660, 703 (1957).

the value of the property the plaintiffs actually acquired.

The plaintiffs also cite *Red Lobster Inns of Am., Inc. v. Lawyers Title Ins. Corp.*, 656 F.2d 381 (8th Cir.1981), in support of their position. There, the title attorneys overlooked use restrictions on land on which the purchaser intended to erect a restaurant. Although the problem was eventually resolved, the opening of the restaurant was delayed for several months. The court allowed the purchaser to recover damages for lost profits against the title attorney.

Although *Red Lobster* involves damages for lost profits rather than for loss of the bargain as asserted by the plaintiffs, the same principles of proximate cause apply in both instances. Lost profits are special damages which can be awarded only when they are the proximate result of the defendant's wrongdoing. *See Red Lobster Inns of Am., Inc. v. Lawyers Title Ins. Corp., supra; Safeco Title Ins. Co. v. Reynolds, supra. See generally* 22 Am. Jur.2d *Damages* §§ 39–41, 624 (1988); D. Dobbs, *Remedies* §§ 3.2, 3.3 (1973). Proximate cause was clearly proved in *Red Lobster*, 656 F.2d at 385–86, but has not been shown here.[6]

In sum, we conclude that the plaintiffs failed to make a prima facie showing that the damage they asserted below, i.e., loss of the right to the coal underlying their property, was the direct and proximate result of the negligence of the defendants. Accordingly, we find no reversible error in the trial court's ruling excluding evidence of such damages at trial.

### III.

The only remaining question is whether the jury's verdict finding the de-

fendants negligent, but assessing no damages was supported by the evidence at trial. The evidence showed that the plaintiffs paid Mrs. Brown $15,000 for the two tracts of land. In addition, the plaintiffs paid Mr. Talbott $200 for his services. Two experts testified as to the market value of the property and, as is often the case, their testimony was not congruent. The plaintiffs' expert testified that the land, without the coal, was worth $6,200. Defendant Talbott's expert testified that the value of the land without the coal was $16,200.

Clearly, the evidence was conflicting. We apply our traditional rule, as set out in Syllabus Point 1 of *McCormick v. Hamilton Business Sys., Inc.*, 175 W.Va. 222, 332 S.E.2d 234 (1985):

"  'Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong.' Syl. pt. 2, *French v. Sinkford*, 132 W.Va. 66, 54 S.E.2d 38 [ (1948) ]."

*See also* Syllabus Point 2, *Rhodes v. National Homes Corp.*, 163 W.Va. 669, 263 S.E.2d 84 (1979).

The jury here evidently believed the estimate of Mr. Talbott's expert as to the market value of the property actually conveyed to the plaintiffs. This figure was in excess of the purchase price of $15,000 and would support a no damage award. Accordingly, we cannot conclude that the verdict was clearly wrong.

For the reasons stated above, we find no error warranting reversal of the decision

---

**6.** The plaintiffs also cite *McClain v. Faraone, supra*, where the attorney failed to discover an outstanding judgment lien. As a consequence, there was a foreclosure, and the purchaser lost the property. The attorney was held liable for its market value.

We do not disagree with this result. Moreover, where a lien or encumbrance is overlooked on property, the attorney's liability is ordinarily limited to the value of the lien and interest. *Safeco Title Ins. Co. v. Reynolds, su-*

*pra;* *Renkert v. Title Guar. Trust Co.*, 102 Mo. App. 267, 76 S.W. 641 (1903); *Bayerl v. Smyth*, 117 N.J.L. 412, 189 A. 93 (1937). If the encumbrance cannot be removed or its value is not ascertainable, damages are ordinarily measured by the diminishment in market value by reason of the encumbrance. *Safeco Title Ins. Co. v. Reynolds, supra. See generally* 2 Mallen & Smith, *supra* § 25.09. Here, however, there was no encumbrance or lien. Accordingly, these principles are not applicable in this instance.

below, and we affirm the judgment of the Circuit Court of Webster County.

Affirmed.